Motion for judgment upon the issues tried before and answered by the jury in this case.

*J. Stewart Ross*, for proponent.

*B. F. Watson*, for contestant.

VAN BRUNT, Ch. J., and BARTLETT, J. 5 concur.

------

In the Matter of the Last Will and Testament of DANIEL R. LIDDY, deceased.

*Supreme Court, First Department, General Term, May 24, 1889.*

1. *Will.*—A will, wherein the testator gives to his wife all his property in preference to his brothers or sisters, is not an unnatural one, especially where he was mainly indebted to her bounty for his property.
2. *Same. Reversal of probate.*—Grave doubts should remain unremoved and great difficulties oppose themselves to the upholding of the decree admitting a will to probate before a reversal should be made by the general term.
3. *Evidence. Burden of proof.*—The burden of proof that a testator is *non compos mentis* rests upon the party who alleges it.
4. *Will. Proof of execution.*—Though the subscribing witnesses to a will do not agree to all the details attending the prominent features of the execution, are not entirely in harmony as to the manner in which the execution of the will took place, and manifested some interest in getting the will executed, yet, if all testified to necessary circumstances from which due execution must necessarily be found, the general term will not reverse the

surrogate's decree admitting the will to probate, so as to refer the question to a jury.

5. *Same. Undue influence.*—The mere fact that a wife has exercised influence upon her husband in relation to the disposition of his property, by will or otherwise, in no way supports the proposition that fraud, undue influence or duress has been employed.

6. *Same. Fraud.*—Nor is the fact that a stranger was sent for, in order to draw the will, a badge of fraud, though one of the testator's brothers, who was in the house at the time, was a lawyer and able to perform the professional duties necessary for the execution of the will.

7. *Evidence. Subscribing witness.*—A subscribing witness may speak of the sanity and condition of the testator at the time of executing the will, and that he was not under restraint.

8. *Same. Medical testimony.*—The testimony of a medical witness in response to hypothetical questions, not justified by the evidence, is not entitled to any consideration.

Appeal from a decree of the surrogate admitting a will to probate.

*Ira Shafer,* for appellant.

*F. R. Coudert,* for respondent.

VAN BRUNT, P. J.—Upon the offer for probate of the will in question, the appellants objected to its probate upon the grounds that the paper propounded as the last will and testament of Daniel R. Lyddy, deceased, was not his last will and testament; that the deceased did not subscribe to said paper in the presence of each, or both, of the alleged contesting witnesses thereto, nor acknowledge the subscription of said paper writing, nor declare the same as, and for, his last will and testament; that each of the attesting witnesses did not sign his or their name as a witness or witnesses thereto at the end of said propounded will at the request of the deceased; that at the time of the execution of said propounded will the deceased did not have testamentary capacity to make the same; and that it was procured, or caused to be procured, by fraud and conspiracy to

defraud, and undue influence practiced upon said deceased by his wife, Mary A. Lyddy, the proponent and others, and that the said propounded will is an unnatural will in any event.

After a careful examination of the evidence, we have come to the conclusion that there is no reason for disturbing the conclusion at which the surrogate has arrived.

In stating the means by which this conclusion has been reached, it will be impossible, within reasonable limits, to discuss at all in detail the evidence produced before the surrogate; but a few general suggestions will be offered which tend to show, in our judgment, that the position which the contestants have in reference to the relative claims of the parties upon the testator, and the circumstances under which this court should reverse the decree of the surrogate, is not well founded.

In the first place, the will is not an unnatural will, in that the testator has given to his wife all his property. Under the circumstances disclosed, in this case, showing the relations existing between the testator and his wife, the entire confidence reposed, each in the other, the fact that to a considerable extent, at least, the testator owed that which he possessed and had a right to will to the bounty of his wife, it does not seem at all unnatural that he should have recognized when he came to make a disposition of that of which a large part he had received from her.

It is true that it is claimed by the contestants that there is little or no evidence of the fact which is hereinbefore stated. But it seems to us that the evidence of disinterested witnesses, as to the declarations made by the testator himself, under the circumstances testified to, cannot be ignored in determining the question as to whether the testator has made an unnatural will or has failed to recognize the claims of those who were nearest and dearest to him. It would seem, under the circumstances, that an unnatural will would have been to have ignored the claims which his wife had

upon him, because of her bounty and generosity towards. him. The fact that he had brothers, gave them no claim upon his estate. His wife should be, and was undoubtedly, nearer to him than his brothers or sisters, and it was by no means unnatural that he should give to the person who was the dearest to him on earth all that he possessed.

There is another erroneous view which, it seems to us, has been indulged in upon the part of the contestants; and that is as to what was necessary to call upon the general term to reverse the decree of the surrogate admitting the will to probate. It is claimed that if a doubt as regards the facts exists in the minds of the appellate court, they are, therefore, called upon to reverse the decree, and have the questions involved passed upon by the proper tribunal for that purpose, namely, a jury.

Although a doubt might perhaps justify such action, yet the existence of simply a doubt by no means calls upon the general term to take such action; and where the surrogate has had the benefit of hearing the oral testimony of the witnesses, it seems to us that there should be more than a doubt, arising from the perusal of the testimony, to justify a reversal; and that although it is not the duty of the court to strain after probate, nor, in any case, to grant it where grave doubts remain unremoved, and great difficulties oppose themselves to so doing, where simply a doubt exists it seems to us it is the duty of the court to affirm the action of the surrogate.

It is necessary, as was laid down in the case of Delafield v. Parish (25 N. Y. 35), to which the contestants refer, that grave doubts should remain unremoved, and great difficulties oppose themselves to the upholding of the decree, before a reversal should be made by the general term. Applying these rules to the facts disclosed by the testimony, is there anything upon this evidence which raises grave doubts as to the correctness of the decision of the surrogate, or great difficulties in upholding such decision ?

After a perusal of the evidence herein, and a comparison of the record, with the points made by the contestants, we fail to find such grave doubts or such great difficulties.

*First.* In regard to the execution of the will, it is claimed that the evidence of the witnesses who swore in regard to the fact of its execution is entirely unreliable and not worthy of credit, although uncontradicted, because of the contradictions contained in the evidence of these witnesses themselves, as to some of the events attending its execution, and because of the manifest interest displayed by some of the witnesses in getting the will executed.

Taking the testimony of each witness by itself, it discloses the performance of acts showing a signature of the will by the testator, showing a declaration of the will, and a request of the witnesses to sign, and a signature by those witnesses in the presence of the testator. These facts, in different forms, are testified to by all the witnesses.

It is true that they do not agree as to all the details attending the prominent features of the execution, and are not entirely in harmony as to the manner in which the execution of the will took place. But they each and all swear to necessary circumstances from which due execution must necessarily be found if such evidence is true.

Now the question arises, is that evidence to be disregarded because of any probability arising from the testimony itself, or because it is impeached by the contradictions of the witnesses themselves in reference to the facts of the execution, and also to the circumstances attending such execution. We think that the very fact that these witnesses have disagreed in some of the minor particulars in reference to the execution of the will is an evidence of the truthfulness of their narrative. They were not regarding the minor features attending its execution, and their attention was directed to the fact of the execution itself and that alone. Whether the testator was bolstered up in the bed at the time the witnesses came into the room, or whether he was

raised by one of the witnesses after he got there, for the purpose of executing, is not a material circumstance, and because they disagree in regard to this, it does not necessarily impeach their testimony, because no two witnesses ever described a series of events culminating in the execution of a paper or in any other fact or incident, that ever agreed in their description of the attendant circumstances. So in regard to the production of the writing materials, and whether a book was produced or not, and by whom, and the various other minor details which are dwelt upon with such great stress as showing the fact that these witnesses were unreliable.

These discrepancies in the testimony in regard to these facts clearly in no way impeached the value of the testimony in respect to the necessary facts to be established in order to show that there has been a due execution of this will. As the learned surrogate has put it, it is necessary to find that all these witnesses have deliberately perjured themselves before we can come to any other conclusion than that the will was properly executed as far as the forms of law are concerned; and there is nothing upon this record which in any way called upon the surrogate, or calls upon us to come to the conclusion that perjury has been committed.

The next objection is that the testator did not possess testamentary capacity, and we are referred to the testimony of the nurse, Sister Regina, Doctor Hamilton and the brothers of the testator, in support of this objection. As far as the testimony of Dr. Hamilton is concerned, it seems to us that it is entitled to no consideration, because the hypothetical questions which were put to him were not justified by the evidence. The assumption throughout his examination was that the witness whose evidence it was claimed formed the basis of the questions put to him, intended to convey the impression by her testimony that at the time she left the testator on the morning of the day upon which the

will was executed, the testator was too weak to carry on any conversation. It is true that she made use of that language in her testimony, but immediately after she qualified it, and when the interrogatory was repeated, " Do you think he was able to carry on any conversation ? " she answered, " I do not know, I cannot tell, because I did not try." And it was further assumed that the delirium under which he was suffering during the night continued until the witness left at half-past nine in the morning, the will being executed within an hour or so thereafter, whereas the testimony shows that in answer to the question whether he was delirious the whole night until six o'clock in the morning, the answer of the witness was, not all the time ; he was not delirious all the time. And when she is asked if the delirium continued off and on during the night to about six the next morning, she answers, " Yes."

Thus showing that the delirium terminated, instead of within half or three-quarters of an hour of the time of the execution of the will at least four hours before, and that at the time the witness left him, at half-past nine o'clock in the morning, he was perfectly conscious, and knew the witness perfectly well and bade her good-morning, and that his voice was pretty well, then. As the questions put to Dr. Hamilton were based upon the theory that the delirium continued until within half or three-quarters of an hour of the execution of the will, it is clear that this evidence can have but little weight in determining the question as to whether the deceased had testamentary capacity.

The same is true in regard to the testimony of the brothers who claimed to have heard the noises at the time at which the testator was suffering from this delirium. It is clear, from the evidence of the nurse, that at half-past nine, when she left him, he was perfectly conscious, his voice was good, and he bade her good-morning, showing that the delirium had departed and his normal mental condition had returned. Now, in respect to this question of mental incapacity, it is

necessary that the contestant should establish the fact.

It is true that the burden of proof in all cases rests upon the proponent of a will to prove that the testator was, at the time of the making the document propounded as his will, of sound and disposing mind and memory; but it is also equally true that at common law and under our statutes the legal presumption is that every man is *compos* and that the burden of proof that he is *non compos mentis* rests upon the party who alleges that an unnatural condition of mind existed in the testator. Therefore, when the contestants in this case allege a want of testamentary capacity, they are bound to produce such evidence as will overcome the presumption of mental capacity. We have in the case before us the evidence of the subscribing witnesses as to the condition of the testator. If that evidence is true, then the testator had testamentary capacity.

The only evidence which it is claimed conflicts with this is the evidence of the nurse, which, as already seen, does not; the evidence of Dr. Hamilton, whose opinion as an expert was based upon supposed facts, which are not borne out by the testimony; and the evidence of the three brothers, whose testimony in no way tends to show that at the time of the execution of the instrument the testator was not possessed of his right mind and faculties and capable of making the will in question.

The objection as to fraud, undue influence and duress seems also to be equally untenable. Undue influence, fraud and duress must be proven, as any other part of the contestant's case.

The mere fact of proof that a wife has exercised influence upon her husband in relation to the disposition of his property by will or otherwise, in no way supports the proposition that undue influence has been exercised. Influence may always be exercised, and it is proper that it should be exercised, but it only becomes improper when it becomes undue, and it becomes undue when it substitutes the will

of the person exercising the influence for the will of the person who is to do the act. Arguments, persuasions and suggestions may be made, so long as the person who is to do the act can weigh the suggestion and has the ability, if so minded, to resist the influence; then there is nothing undue in regard to it, although he may yield to it. And even if there was proof in this case that the proponent had requested the testator to make this will in her favor and urged him to do it, it would have been no ground for finding that the influence which she exercised in the making of the will was such as to impeach the integrity of the instrument; and it would seem that the relations of the parties go to show beyond all question that no such influence was necessary in order that this will should be executed.

It appears that large portions of property were held by the testator and his wife, as joint tenants. There seems to have been an intention between them that the survivor should have the whole property. The will in question was drawn long anterior to the time of his death, and although not executed, the purpose was declared by the testator that upon his death his wife should have all his property.

These facts show upon his part an intelligent purpose and that the execution of the will was simply the carrying out of that purpose at a time when it became necessary for him to act because of the imminent danger he was in, and because had he not made the will, the very property which his wife had given to him would be out of her possession.

There is no evidence whatever to sustain the proposition that fraud or duress was resorted to for the purpose of procuring the execution of the will. There is not a particle of evidence of duress; and the only scintilla of evidence which might go to support the allegation of fraud is the evidence that the proponent stated to the contestants that the testator had asked her to send for his brothers and that she told him she had done so, which was true, and that they had not

come, which was untrue.   The very fact that the proponent stated this to the brothers, of which they would have had no knowledge, otherwise shows that what she did in that regard was not done with a fraudulent intent.   If she had made this statement to him for the purpose of keeping them out of the way in reference to the execution of the will, does any human being suppose that she would go to the very persons she had thus defrauded and tell them of the fact entirely unnecessary as it was?   She claimed that he was too ill to see them, that it would excite him and that it was not for his benefit that they should see him, and that was the reason they were not invited into the sick room.   When it became evident, however, that he was dying they were then invited into the room, and at least one of them saw him upon more than one occasion.

It is claimed, as a badge of fraud, that a stranger was sent for the purpose of drawing this will, and although these brothers were in the house and one of them at least was a lawyer and able to perform the professional duties necessary for the execution of the will.   It seems that when the testator desired to have a will drafted he did not go to his brother, but preferred a stranger; and it would appeal therefore, in not employing the brother, his wife was acting in accordance with her husband's own preference.

If he did not go to his brother when he wanted his will drawn, preferring to have some stranger, as he naturally would under the circumstances, the fact that the wife acted in precisely the same way constitutes no great badge of fraud.

It seems to be needless to discuss the evidence further, because, within the limits of an opinion, it is impossible to refer to the same in detail, and we can only, in a general way, state the impressions which a reading of the evidence has made upon our minds.   We think, from the evidence, that no grave doubts, such as would justify this court in reversing the decision of the surrogate, exist.

Our attention has been called to various exceptions to evidence, especially to the questions put to the subscribing witnesses, as to their opinions as to the competency and sanity of the testator.

It is undoubtedly true, the general rule is that witnesses must speak of facts alone, and may not draw opinions, conclusions or inferences. But to this rule there are exceptions, and one is that the subscribing witness to a will may speak of the sanity of the testator at the time of executing the will, and also to the condition of the testator at the time or that he was not under restraint.

The position of the subscribing witnesses, in this respect, is well recognized as entirely different from that of other persons, and their opinions upon these subjects are received precisely the same as those of experts.

None of the other exceptions seem to call for special mention, as none of them are of sufficient importance, even if well taken, to justify a reversal of the decree, as the evidence admitted under the objections was not of such a character as necessarily to prejudice the contestants.

The decree should be affirmed, with costs.

ALLEN, J., concurs.