tions 68 and 69 of the act of 1882 (section 55), but in the schedule of repealed acts at the end, while the said act of 1882 is included, the said sections are expressly exempted from repeal. The act of 1892 being restricted to banking associations and individual bankers authorized and controlled thereby, I can see no object in thus keeping alive the said two sections of the act of 1882, unless to continue to "private bankers" the immunity against forfeiture of the principal under the general usury laws, for in all else the said sections are fully incorporated in the new act. To give such immunity to money lenders who choose to call themselves private bankers, and refuse to subject themselves to public regulation and supervision, while subjecting to such forfeiture all individuals who do not thus dub themselves, seems strange; but it has to suffice with the court that the legislature has so enacted.

As forfeiture of the principal may not be decreed against the defendants, it follows that the plaintiff is not entitled to an injunction pending the action to prevent the defendants from selling the shares as collaterals to pay the debt. They have the right to sell them to pay the debt. They may not, however, lawfully retain the proceeds to pay the interest; nor may they hold or sell them under the option. Chapter 237 of the Laws of 1882 has no application to this case, as it only makes lawful the payment of "any sum of money to be agreed upon in writing" for advances of money upon warehouse receipts, bills of lading, certificates of stock, and certain other specified collateral securities. The exaction in excess of interest in this case was not of a sum of money, nor was it provided for by a written agreement. I think this action is maintainable. The said shares of stock are of no fixed or market value, as the company in which they are has not got into full operation, and in an action for their conversion, or for replevin, or for the statutory penalty of twice the amount of the usurious exaction, it would be difficult, if not impossible, to prove a sum certain. Such an action is therefore not an adequate remedy. The jurisdiction of equity in cases of usury is ancient, and has been aided by our usury statute. 1 Rev. St. p. 771, pt. 2, c. 4, tit. 3; Laws 1837, c. 430; Allerton v. Belden, 49 N. Y. 373.

The injunction is continued pending the action, unless the defendants offer to receive the principal of the indebtedness in full, and surrender up the notes and the collateral and the option, in which case the injunction will be modified upon an application upon five days' notice, so as to allow the said shares of stock to be sold as collateral to pay the principal.

(4 App. Div. 1.)

### In re SPRATT'S WILL.

(Supreme Court, Appellate Division, First Department. April 10, 1896.)

1. APPEAL—SURROGATE'S DECISIONS—QUESTION OF LAW.
	Code Civ. Proc. § 2545, provides that in each case the surrogate must file his decision stating separately the facts and the conclusion of law; that either party, on the settlement of the case, may request a finding on any

question of law; that an exception may be taken to such finding or ruling, or to the refusal to so find or rule; and that an appeal from a decree of the surrogate brings up for review each decision to which an exception has been taken by appellant. *Held*, that on appeal no questions of law can be reviewed unless exceptions have been taken to them.

**2. Same—Review of Facts.**

Where the notice of appeal, provided for by Code Civ. Proc. § 2576, states that the appeal is taken from the decree of the surrogate, and every part thereof, the facts are before the appellate court for review, though no exception to the surrogate's decision has been filed.

**3. Wills—Undue Influence—Burden of Proof.**

One who contests a will on the ground that it was obtained by undue influence must prove that the undue influence was actually exerted, and that the effect of it was to overcome the will of the testatrix, and procure her to make a disposition of her property other than that which she would otherwise have made.

**4. Same—Examination of Witness.**

Where the only evidence as to the relations between the testatrix and her residuary legatee, who is alleged to have exercised undue influence over testatrix, is that elicited on the cross-examination of such legatee, Code, § 829, does not preclude the witness being given the very fullest opportunity to explain all the transactions as to which he is interrogated, and to give not only the facts, but the circumstances, when material.

Appeal from surrogate's court, New York county.

Application for the probate of the will of Julia Ann Spratt, deceased. From a decree of the surrogate (32 N. Y. Supp. 1092) admitting to probate a will dated April 24, 1893, and refusing probate to an instrument dated May 25, 1893, proponents of the latter appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Francis Forbes and Chas. T. Haviland, for appellants.

Chas. H. Beckett, for respondents.

RUMSEY, J. The respondents object to the consideration of this appeal for the reason that no exceptions to the decision of the surrogate were filed by the appellants. Section 2545 of the Code of Civil Procedure provides for the taking of exceptions to a ruling made by the surrogate upon the trial. It also provides that the surrogate must file his decision in each case, which must state separately the facts found and the conclusion of law, and that either party may, upon the settlement of the case, request a finding upon any question of law, and an exception may be taken to such finding or ruling, or to the refusal to so find or rule. It is further provided that the appeal from a decree of the surrogate's court brings up for review each decision to which an exception is taken by the appellant. Under the provisions of that section, it was held in the case of Angevine v. Jackson, 103 N. Y. 470, 9 N. E. 56, where no exception was taken to the findings, that the general term was powerless to reverse the decree of the surrogate. But upon further consideration, in the case of Burger v. Burger, 111 N. Y. 524, 19 N. E. 99, and 21 N. E. 50, the ruling in the Angevine Case was to some extent changed. In the Case of Burger an exception had been taken to the decision of the surrogate, but the court held that that exception, for

reasons there stated, was of no avail. It further held, however,. that, although the exception was not available to raise any question,. yet that an appeal from the decision of the surrogate on the facts,. as well as on the law, was sufficient to give the appellate court juris- diction to review the facts, if a case containing the evidence had been made, and that an exception to a finding of fact was neither necessary nor proper. It is provided by section 2576 of the Code of Civil Procedure that an appeal may be taken upon questions of law,. or upon the facts, or both. The appeal is to be taken by serving a notice referring to the decree, and stating that the appellant appeals from the same, or from a specified part thereof. It was held in Re Stewart, 135 N. Y. 413, 32 N. E. 144, that where the notice of appeal stated that the appeal was taken from the decree of the surrogate, and from every part thereof, it was sufficient to bring up for review, not only the law, but the facts. Considering the last two cases to- gether, the rule is, as we think, that, where a notice of appeal has been taken from every part of the decree, the facts are before the appellate court for review, although no exception to the surrogate's decision has been filed, and that, upon the hearing of the appeal, the court may reverse it upon the facts, if the case is one which requires such action. But no questions of law can be reviewed upon such an appeal unless exceptions have been taken as provided by section 2545 of the Code. The case presented here, therefore, is sufficient to. require us to review the facts, and also such questions of law as were raised by exceptions taken to the rulings of the surrogate upon the trial.

The testatrix, Julia Ann Spratt, was a widow, aged from 70 to 74 years, who had lived for many years in the city of New York. She had no children or descendants of any children, her sole relatives being nephews and nieces. On the 24th of April, 1893, she exe- cuted a will; and in about a month from that time, and on the 25th of May, 1893, she executed another one. She died in October of the same year. Each will was presented for probate by the proper person, and the usual allegations in opposition to the probate of each one were presented by those persons who desired to contest them. After the contestants' answers had been filed in each case,. the surrogate made an order, upon consent, consolidating the two proceedings, which were carried on together from that time. As. the result of the trial had upon those proceedings, the decree from. which this appeal was taken was entered, denying probate to the will of May 25, 1893, and admitting to probate that of April 24,. 1893. It was conceded on all hands that the testatrix was of sound mind and competent to make a will, and, so far as mere formal mat- ters were concerned, each will was properly executed. The only question presented to the surrogate, and upon which he decided, was whether the will of May 25, 1893, was procured by undue influence practiced upon Mrs. Spratt by William Nelson Le Page, the residu- ary legatee in that will. Le Page was the nephew of Mrs. Spratt's husband, who, it appeared, had died many years before, leaving a considerable estate in China. After the death of the husband, it seems that Le Page had been consulted by Mrs. Spratt with reference

to the collection or settlement of her husband's matters in the foreign country, and had taken general charge of it for her, under an agreement that he was to receive a certain portion of what was collected, as compensation for his services. While the testimony upon this subject is somewhat vague, it is fair to infer that he brought about a settlement of the matter, and received, in one form or another, the agreed compensation for his work. After that time it would seem that Le Page was trusted by Mrs. Spratt to a very considerable extent; that he was her adviser somewhat; and that he had considerable to do with her financial affairs.

The surrogate, in deciding the case, assumed, as the result of the evidence, that Le Page occupied a confidential relation towards Mrs. Spratt. Were it necessary to pass upon that point, we would have great difficulty in reaching the conclusion which the surrogate arrived at. But without considering that question further, and assuming, upon the decision of this appeal, that the surrogate was correct in his conclusion in that regard, it remains to be seen whether the facts warranted a finding that the will was procured by undue influence practiced by Le Page, as was found by the surrogate.

What constitutes undue influence which would avoid a will has been so frequently the subject of decision that no examination of authorities with regard to it is necessary. The rule as we adopt it is laid down in Re Seagrist's Will, recently decided by this court, and reported in 37 N. Y. Supp., at page 497, and the cases therein cited.

The surrogate, assuming that Le Page occupied towards the testator a confidential relation, held that there arose from that fact alone a presumption that the will had been procured by his undue influence practiced upon her, and that the burden was put upon him of rebutting this presumption, and establishing that in making this will the testator acted without restraint or undue influence, and that it was the production of her own free will, without any undue pressure of the beneficiary. In this conclusion the surrogate erred. Where contracts are made inter vivos which take effect presently, it is well established that, if the party benefited by such contracts occupies towards the other party a confidential relation, the court will presume that the contract was obtained through his fraud, and will put upon him the burden of proof, when it is attacked, that it was fair in all its parts, and was obtained by the exercise of no improper influence upon the other party to the contract. But in the case of wills no such rule exists. In such cases the natural influence of the parent or guardian over the children, or the husband over the wife, or the attorney over the client, may lawfully be exerted to obtain a will or legacy, so long as the testator thoroughly understands what he is doing, and is a free agent. This distinction is so thoroughly established that it is only necessary to cite authorities in support of it. Parfitt v. Lawless, L. R. 2 Prob. & Div. 462; Brick v. Brick, 66 N. Y. 144; In re Lyddy's Will (Sup.) 5 N. Y. Supp. 636; In re Bedlow, 67 Hun, 408, 22 N. Y. Supp. 290; Bancroft v. Otis (Ala.) 8 South. 286. Neither is it sufficient to establish that a will was obtained by undue influence that the person accused of practicing it had an oppor-

tunity so to do, because the fact that such an opportunity existed does not raise the presumption that advantage was taken of it. In re Bedlow, 67 Hun, 408, 22 N. Y. Supp. 290; Cudney v. Cudney, 68 N. Y. 148. The person who alleges that the will was obtained in that way is bound to prove, not only that there was an opportunity to exercise undue influence, but that it was actually exerted, and that the effect of it was to overpower the will of the testator, and procure him to make a disposition of his property other than that which he would have made if no influence was exerted, and which he would not have made if no such influence had been practiced upon him. It will be necessary to examine the evidence in this case to see whether, within these well-settled rules, the contestants established that the will was procured by undue influence of Le Page, as the surrogate found.

It appears from the testimony that, in 1881, Mrs. Spratt made a will, in which Le Page was named as residuary legatee. This will continued in existence until April 24, 1893. There is nothing to show that during all that time there was any ground of difference between Le Page and Mrs. Spratt, or that up to that time she had any reason to complain of his conduct towards her. It is quite true that there were financial transactions between them, and it may be that, as the result of these transactions, Le Page did not appear in an enviable situation, but with regard to that more will be said hereafter. It was made to appear that on the 24th of April, 1893, Mrs. Spratt made a new will, from the provisions of which Le Page was excluded, and another person named as residuary legatee. Why this was done nowhere appeared. Where Le Page was at that time is not shown by the evidence. It does appear, however, that, soon after that time, he came to the city of New York, with his wife. He did not stay at Mrs. Spratt's house, but he and his wife stayed at the Sinclair House. There is no evidence to show that from the 24th of April, 1893, to the 25th of May, 1893, he saw Mrs. Spratt more than twice. One of those times was when the second will was made, and the other a few days before it. The person who saw him with Mrs. Spratt at that time did not undertake to say that he had one word of conversation with her. The case is entirely barren, therefore, of any proof that, by word or act between the 24th of April and the 25th of May, Le Page communicated with Mrs. Spratt on the subject of a will, or conveyed to her any intimation or request that she should make any change in the will which she had previously made. Indeed, there is no evidence in the case that he knew what were the terms of the will of April 24th. Mrs. Le Page said that she heard that Mrs. Spratt had made a will, and that she told her husband of it, but that she never saw it, and did not know what was in it. There is no evidence to contradict this except the testimony of Mrs. Carrie Spratt, who says that at one time, in the month of May, 1893, she saw Mrs. Le Page in the laundry, showing her husband a folded light brown paper; and that immediately afterwards Le Page said that he had to go down town, and that he would be back; and that he was very much excited. It does not appear that Le Page or his wife looked at the paper, or that they knew the

contents of it, nor that it was the will of April 24, 1893. But it was possibly fair to infer, although there was no direct proof upon the subject, that Le Page did have some conversation with Mrs. Spratt during the month of May, 1893, because in some way he became possessed of her desire to have another will made, and procured Harrison & Byrd to go to her house to make it. Even that inference, however, leaves us a long way from any proof that he exercised any undue influence, or any influence whatever, upon Mrs. Spratt to get her to make the will she did make in May. The only evidence as to the relations between these parties is that derived from Le Page's cross-examination when he was sworn and examined as a surrogate's witness. Care must be taken not to draw from that examination too severe inferences against the witness. He was required to answer explicitly whatever question was put to him, however harsh might be the inferences to be drawn from his answer. He was not permitted to explain his answers, although he made many efforts to do so; nor was he permitted to tell fully any of his business transactions with Mrs. Spratt, from which these inferences were drawn, which, as the surrogate says, show him in an unenviable light. Neither was he permitted, by independent evidence, to explain any of these transactions. For these reasons, it is necessary to be careful, and not lay too much stress upon this cross-examination of Le Page, either as showing that he was a bad man, or that his relations with Mrs. Spratt were such that he could have practiced undue influence upon her if he had seen fit. When the conduct of a witness is attacked in such a case, he should have given to him the very fullest opportunity to explain all the transactions as to which he is inquired of, not only giving the facts, but, where the surroundings are material, giving the circumstances of the transaction in full. In this case, although Le Page was permitted to go into his business affairs with Mrs. Spratt, frequently when he attempted to give testimony on his own account with regard to some transaction, he was met by the objection that it was not admissible, under section 829 of the Code, and his version of the transaction was excluded. Not only was this done in his own case, but it was done in the case of the witness Cole, when he was sworn to testify as to the payments made by him to Mrs. Spratt. But, giving this testimony its utmost weight against Le Page, it proves only that he had used his friendship with Mrs. Spratt to borrow money of her, part of which he had paid; but it does not show that he had gained any great control or influence over her, much less that he exercised any at this time. Besides the testimony of Le Page, there was evidence given from Mrs. Sellon and from one Rodenberger, bearing upon the feeling of Mrs. Spratt towards Le Page. Of this evidence it may be said that it showed that Mrs. Spratt found fault with Le Page at the time of which the witnesses spoke, because he had borrowed money of her. Except for that testimony, there is no evidence in the case to show any undue influence on the part of Le Page in the making of the will of May 25th. On the contrary, it appears from the testimony of Mr. Harrison that Mrs. Spratt told him what legacies she desired to leave by that will, that Le Page said nothing on the subject, and she

communicated with nobody in his presence with regard to them, except with Toner, about the carriage and horse. A comparison of that will with the will of April 24th shows that there is little material difference between them, except with regard to the residuary legatee. In the will of May 25th she had reinserted Le Page as residuary legatee, which position he had occupied towards her ever since 1881, except one month. The other provisions of the will are substantially like the will which was made on the 24th of April.

We have thus gone over in a general way all the testimony which is relied upon as showing that the will was obtained by undue influence practiced by Le Page upon Mrs. Spratt, and we have reached the conclusion that the surrogate erred in his decision on that point.

We have examined the various exceptions taken to the ruling of the surrogate; but, as the conclusion reached above will require a new trial of the issue of undue influence, it is unnecessary to say more with regard to it than that many of them proceeded upon an erroneous principle. The evidence of Cole, which was objected to and excluded as incompetent, under section 829 of the Code, was plainly competent. So was the evidence of Mrs. Le Page. She had been examined fully as to the transactions with Mrs. Spratt, and as to the time when she became acquainted with her; and, by that course of examination, the contestants had opened the whole subject, so that she was competent to testify upon it; and it was error to exclude her testimony upon the grounds to which objection was made. But it is unnecessary to pursue the investigation of these exceptions further. The conclusion of our examination is that the decree of the surrogate must be reversed, and the case must be sent for trial by jury in the supreme court upon two questions: First. Was the paper writing dated on the 25th of May, 1893, the last will and testament of Julia Ann Spratt? And, second, was such paper writing procured by fraud and undue influence of Robert Nelson Le Page?

The costs of this appeal are to abide the event of the final determination of the case, after the new trial shall have been had. All concur.