### In re SPRATT'S WILL.

(Supreme Court, Appellate Division, First Department. May 7, 1897.)

WILLS—UNDUE INFLUENCE.

A finding that a will was procured by undue influence is sustained by evidence that proponent saw testatrix every day for many days before the will was executed; that, when he heard of the existence of the previous will, he said that he would compel testatrix to change it; that he alone conferred with testatrix about the later will; that he or his wife was constantly watching testatrix; that he went in person to procure a lawyer to draw the will; that instructions were given, and the will drawn, executed, and delivered within an hour; that during the whole of that hour proponent never left the presence of testatrix, and excluded from the room during that hour an intimate friend of testatrix; and that testatrix stood greatly in fear of proponent.

45 N.Y.S.—18

Appeal from trial term, New York county.

Proceeding for the probate of the will of Julia Ann Spratt, deceased. From an order denying a motion for new trial, after a trial of the issues by jury, proponents appeal. Affirmed.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

C. T. Haviland, for appellants.

C. H. Beckett, for respondent.

PER CURIAM. On a former appeal in this matter (38 N. Y. Supp. 329), we had under review a decree of the surrogate rejecting the will of Mrs. Spratt, made in May, 1893, and admitting to probate the will she made, executed, and published in the month of April, 1893. That decree was reversed, for the reason that the contestants of the May will had not produced satisfactory evidence to establish their claim, that that will was procured by Le Page by undue influence on his part, exerted upon the testatrix. Two things were deemed to be deficient in the evidence then before the court, viz.: First, proof showing an opportunity for Le Page to influence the testatrix, it then appearing that in the interval between the dates of the two wills he had not seen the testatrix on more than two occasions; and, second, evidence to show that he knew anything about the April will until a day before the May will was executed. It was also apparent from the record on the previous appeal that Le Page was not permitted to testify fully on the witness stand to various matters connected with his financial transactions with Mrs. Spratt, and was thus deprived of his right to give his version of the matters, and explain them if he could. On the reversal of the decree of the surrogate, the case was sent back to be tried by a jury on framed issues, and, a trial having been had, the jury found that the May will was obtained by Le Page by fraud and undue influence exerted by him upon the testatrix, and that the May will was not the last will and testament of the testatrix, but that the one executed in April, 1893, was her last will and testament. From orders denying motions for a new trial, the proponents of the May will now appeal. All that was lacking in the proofs before the surrogate (the record of which was before us on the first appeal) was more than supplied on the trial of the framed issues before the jury. The greatest latitude of explanation of his business affairs with Mrs. Spratt was allowed Mr. Le Page, and it was shown (principally by himself) that he was in the city of New York for many days before the execution of the May will, and that he was in the habit of seeing and talking with Mrs. Spratt every day, and sometimes twice a day, for many days preceding the execution of that will. It was also shown that he knew of the execution of the April will long before the date at which he states he acquired that knowledge. It was also testified to that, when he was informed of the existence of the April will, he announced his determination to compel the testatrix to change it, and it was further shown that he alone conferred with the testatrix respecting the May will; that he or his wife was constantly, as it were,

guarding the testatrix; that he went in person to procure a lawyer to attend upon Mrs. Spratt to draw her will; that instructions were given, the instrument drawn, executed, and delivered to one of the persons named as executor in it, all within an hour; and that during the whole of that hour Le Page never left the presence of the testatrix, and excluded from the room, during that hour, Hazelton, the intimate friend, adviser, and member of the testatrix's household. It was also shown by the testimony of Bodenberger that the testatrix was in great fear, amounting to terror, of the influence of Le Page upon her, and that she, on various occasions when Le Page would come into her presence (Bodenberger being there also), would beseech Bodenberger not to leave her alone with Le Page. All this and much more testimony was before the jury on behalf of the contestants of the May will, and, although many of its principal features were strenuously denied by Le Page, he was not believed by the jury. The issues between the parties were clearly and very fairly left to the jury by the learned judge presiding, to whose charge no exception was taken by either party, and therefore we are not at liberty to disturb the verdict, it being based upon conflicting, and supported by sufficient, evidence.

The exceptions appearing upon the record require no consideration. The contention of the appellant respecting the burden of proof cannot avail. The question is not raised, no objection having been taken to the method in which the trial was conducted, but the ruling of the judge was apparently acquiesced in by both parties. No ruling made during the course of the trial is of such a character as would materially affect the merits, or could have really prejudiced the rights of the proponents of the May will.

The orders appealed from must be affirmed, with costs.