In the Matter of the Issuance of Letters of Administration upon the Goods, Chattels and Credits of CHARLES E. MURTHA, JR., Deceased.*

GRAHAM MURTHA, Administrator, etc., of CHARLES E. MURTHA, JR., Deceased, and Another, Appellants; KATHRYN LYNCH or KATHRYN LYNCH MURTHA, Respondent.

First Department, April 24, 1931.

* Revg. 136 Misc. 424.

*Joseph M. Proskauer* of counsel [*J. Charles Weschler, George W. Cornell* and *Walter T. Kohn* with him on the brief; *Weschler & Kohn* and *Wilson, Wager & Cornell,* attorneys], for the appellants.

*George Thoms,* for the respondent.

SHERMAN, J. The surrogate granted letters of administration herein to Graham Murtha, a brother of deceased. Subsequently, Kathryn Lynch, using the name of " Kathryn Lynch Murtha," made a petition to the surrogate for the revocation of the letters of administration upon the ground that " such grant of letters to the said Graham Murtha, and his appointment was obtained by a false suggestion of a material fact in that the aforesaid petition of said Charles E. Murtha [decedent's father] under which said letters were granted, alleged that the aforesaid decedent left surviving no widow, and as his only next of kin and heirs at law, his father, Charles E. Murtha, said petitioner." (Surr. Ct. Act, § 99, subd. 4.)

Petitioner claims to be the widow of decedent, and upon the issue presented by the petition and the answers of Graham Murtha and Charles E. Murtha, the learned surrogate has found that the decedent and the petitioner were married by virtue of a common-law marriage relationship.

On this appeal, the petitioner, respondent, contends that the only question for review is whether there exists any evidence supporting the decree appealed from; and asserts that this court has no power to decide questions of fact, because the notices of appeal do not contain the express statement that appellants desired to review the

facts, and that, therefore, this appeal must be treated as raising only questions of law. In support of this view, we are referred to *Matter of Gilman* (92 App. Div. 462), but the statement to such effect in that case is posed as a query and the discussion is no more than mere dicta.

· The power of the surrogate to revoke letters of administration is expressly conferred by subdivision 6 of section 20 of the Surrogate's Court Act, viz.: " A surrogate, in or out of court, as the case requires, has power: * * * 6. To open, vacate, modify, or set aside, or to enter as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision must be exercised only in a like case, and in the same manner, as a court of record and of general jurisdiction exercises the same powers."

Therefore, as respondent's petition was to vacate the order of the surrogate, under which letters of administration were first issued because of " fraud," or " other sufficient cause," it follows that under the provisions of section 309 of the Surrogate's Court Act, this court may review the determination of the surrogate " as if an original application were made " to this court. Section 309 of the act provides: " Where an appeal is taken upon· the facts, the appellate court has the same power to decide the questions of fact, which the surrogate had; and it may, in its discretion, receive further testimony or documentary evidence, and appoint a referee.

" The appellate court may reverse, affirm, or modify, the decree or order appealed from, and each intermediate order, specified in the notice of appeal, which it is authorized by law to review, and as to any or all of the parties; and it may, if necessary or proper, grant a new trial or hearing. Upon an appeal from a determination of the surrogate, made upon an application pursuant to subdivision six of section twenty, the appellate court has the same power as the surrogate, and his determination *must* be reviewed as if an original application were made to that court. The decree or order appealed from may be enforced, or restitution may be awarded, as the case requires, as prescribed with respect to an appeal from a judgment."

Prior to the enactment of the Surrogate's Court Act (Laws of 1920, chap. 928, as amd. by Laws of 1921, chap. 438), this court possessed the same power to decide questions of fact as the surrogate, by virtue of section 2763 of the Code of Civil Procedure (the predecessor of section 309 of the Surrogate's Court Act). The existence of that power was expressly recognized in Matter of Shonts (229 N. Y. 374), the court there stating (at p. 378): " The next question is whether this appeal presents any question of law for

review. In the opinion of the Appellate Division it is said that: ' We are called upon on this appeal to review said determination of the surrogate as if an original application were made to this court (Code Civ. Proc. § 2763).' "

In *Matter of Van Alstyne* (142 App. Div. 209 [3d Dept.]) the court decided that the Appellate Division has the same power to decide questions of fact as the surrogate, and that it should render the decision which the surrogate should have rendered on the facts.

In *Matter of Spratt* (4 App. Div. 1, 3 [1st Dept. 1896]) it was held that where the notice of appeal states that an appeal is taken from every part of the surrogate's decree, the facts are brought before the appellate court for review, although no exception to the surrogate's decision be filed, and that upon the hearing of the appeal the court may, in a proper case, reverse the decree upon the facts (citing *Matter of Stewart*, 135 N. Y. 413). The decisions in the *Spratt* and *Stewart* cases were based on the provisions of former section 2576 of the Code of Civil Procedure. (Since made Code Civ. Proc. § 2757, as revised by Laws of 1914, chap. 443; now Surr. Ct. Act, § 294.)

The notices of appeal here are from each and every part of the surrogate's decree, and a case having been made and settled by the surrogate, with exceptions taken by the appellants on the ground that the findings are contrary to evidence and contrary to law and against the weight of the evidence, we are called upon to review the facts and make a determination of the issue, upon the competent evidence appearing in the record. This appeal brings up for review questions of law and of fact.

The evidence here is that no ceremonial marriage was ever entered into between respondent and Charles E. Murtha, Jr. Though the petition was verified by " Kathryn Lynch Murtha," in her bill of particulars she uses the name " Kathryn Lynch." This name was used by her in signing a lease dated February 16, 1927, of an apartment occupied by her at No. 239 West Seventy-second street in the city of New York, on the door of which the name " K. Murtha " appeared only after Mr. Murtha died on May 20, 1928.

If the decedent and respondent were known at all as husband and wife, he was known in such role as " Mr. Lynch." On behalf of the respondent, an elevator operator at No. 551 West One Hundred and Seventieth street for five years commencing in 1912, testified that he knew respondent as a tenant in that apartment house under the name of " Mrs. Lynch " and that he saw there a man who sometimes referred to Mrs. Lynch as " his wife," and that this " Mr. Lynch " had asked him to take a package up to " my wife; "

that Lynch was taken by him to the apartment at night and he saw Lynch leave in the morning. The names on the door were Mr. and Mrs. Lynch. This witness described Mr. Lynch as a " well up-to-date gentleman, nicely dressed," and that he was " his height." He did not know Murtha nor identify him as being " Mr. Lynch." This description is so vague that it might apply to many individuals. Other witnesses, tenants in the same building, knew respondent and a man living with her who referred to respondent sometimes as " Mrs. Lynch " and sometimes as " my wife." They were known to the tenants as Mr. and Mrs. Lynch. There is nothing in their testimony to show that this particular " Mr. Lynch " was Charles E. Murtha.

This same infirmity of lack of identification of the deceased Murtha as the " Mr. Lynch " mentioned in their testimony is found in the testimony of other tenants of that apartment house and deprives it of much probative value. None of them knew Murtha and no attempt was made to identify Murtha by photograph or by accurate description. There is, therefore, nothing in their testimony to show that there was but one individual known as Mr. Lynch and that he was Murtha, or that the decedent was ever present, under that name or during the years of respondent's residence, in that apartment house.

Mr. and Mrs. Clark, who were not tenants of that apartment house and knew Mrs. Lynch, do not identify the deceased Murtha as being the man known to them under the name of Lynch.

Two witnesses, however, were called near the close of petitioner's case, who knew Charles E. Murtha, Jr.; Lillijean, a professional dancer, and Kalashian, his friend, whom he had first met at a sporting club in Paris. Lillijean asserted that Mrs. Lynch introduced Mr. Murtha to him in 1923. Kalashian testifies to a similar later introduction to him. Lillijean's testimony is that he lived in the same apartment with Mrs. Lynch and Murtha for several years at No. 334 West Seventy-second street and at No. 239 West Seventy-second street, and continued to reside with her in the same two rooms at the latter address after Murtha's death.

According to the testimony of these two witnesses, they saw the decedent Murtha at the One Hundred and Seventieth street premises at or about the time that petitioner moved therefrom in 1925 and 1926 to the Seventy-second street premises, and that Murtha was the man who was introduced to them as her husband. Their testimony is a very slender basis upon which to predicate the finding of an actual marriage.

Petitioner had maintained a dancing academy in West Forty-

sixth street at which Lillijean was one of the instructors. He continued to live in her apartment on Seventy-second street after Murtha's death. Indeed his name was later put upon the door. There is likewise additional evidence from which it may be inferred that they occupied the same room.

As against this claim of the existence of a marriage, it was shown that the lease of the Seventy-second street apartment was taken by petitioner under the name of Kathryn Lynch; that Murtha in an affidavit, verified June 30, 1925, certified to the New York Title and Mortgage Company that he then resided at No. 225 West Eighty-sixth street and was in 1907 unmarried and still unmarried at the time of the verification of that affidavit, which was given to the title company in order to induce it to insure, as free from dower, premises which had been conveyed by him in 1907.

Decedent's brother and sister gave evidence showing that decedent lived with his father and family at No. 225 West Eighty-sixth street up to six years before his death, when he rented an apartment at One Hundred and Thirty-fifth street and Amsterdam avenue, which he still maintained at the time of his death.

The proof indicates that, while the relations between decedent and petitioner were intimate, they began, according to her bill of particulars, in 1903, so that, there having been no ceremonial marriage, such relations were in their inception meretricious. Common-law (so called) marriages were not recognized as legal in this State at that time. (See *Matter of Ziegler* v. *Cassidy's Sons*, 220 N. Y. 98.) The change in the Domestic Relations Law became effective on January 1, 1908 (the date taken by the surrogate for this marriage).

The conclusion of the learned surrogate was doubtless affected by the evidence of petitioner, respondent, who, having been called to identify her signature to the lease, was thereupon erroneously permitted to testify, over objection, to conversations had with the deceased in contravention of section 347 of the Civil Practice Act. Thus, she was allowed to state that she talked with Charles E. Murtha, Jr., before signing the lease and that he told her to use the name "Lynch" for another year, and that it was used for business purposes; that he said that he did not want his name attached to a dancing studio, and asked her to keep on using her name in that business; that he looked over everything that she signed; and that after she signed that paper until the time of Murtha's death she continued to occupy those premises with him, he being there every night; that he told her why he wanted her

to use that name, and why they did not have a ceremonial marriage; and in answer to the question as to who provided the money to pay the rent for the premises covered by the lease, she answered, " My husband; " and in answer to a further question, stated that his name was Charles E. Murtha, Jr. That evidence should have been excluded.

Upon the proof we reach the conclusion that the evidence does not establish the existence of a common-law marriage between petitioner, respondent, and decedent. It points to an illicit relationship, not recognized in law as reaching the dignity of status created by actual marriage. The fact that the connection was illicit in origin fortifies the presumption that it retained that character. Such cohabitation is presumed to continue as meretricious throughout its whole extent unless there was a change in the essential character of the relationship shown by direct proof or circumstantial evidence of high quality. Mere cohabitation accompanied by an occasional word of introduction as her husband did not satisfy the burden imposed upon petitioner. Frequently, for the sake of outwardly conforming to the standards of the community, a party to such an illicit connection will, in introducing his partner, use descriptive terms proper only if a marriage existed between them. What other expedient could be adopted to give an outward token of respectability to an illicit relationship? Their dwelling together could not be altogether hidden from the tenants and employees of the apartment house, and unless the euphemisms of marriage were employed, they would have had to make stark admission of their illegal association. There is nothing here to show long-continued repute and recognition, among friends and neighbors, of a marital life, nor anything to prove the establishment of a real home to which they resorted, but rather a clandestine and secret relationship which is the contradiction of marriage. No reason is given why Murtha should have concealed from his family, friends and associates the existence of the marriage, if it really existed. No friend of his came to join him or visit at respondent's apartment. Those called as witnesses seem to have been only her friends or acquaintances. There was no extensive introduction of petitioner as a wife, no letters exchanged between them in which that term was used — in fine, the case does not present those indicia which have led courts in the past to find the existence of a common-law marriage where the relationship of the parties in the community pointed unerringly to the existence of a marriage, even though no ceremonial marriage had taken place.

The decree appealed from should be reversed, with costs to the

appellants, and the petition to vacate the prior letters of administration denied.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Decree reversed, with costs to the appellants, and the petition denied, and the matter remitted to the Surrogate's Court in accordance with opinion.