VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.

---

IN THE MATTER OF THE PROBATE OF THE LAST WILL AND TESTAMENT OF ALFRED BEDLOW, DECEASED.

*Will — undue influence — presumptions — transactions between persons, one of whom is subject to the control of the other — correctness of testator's information — error in admitting evidence before a surrogate — when disregarded on appeal — evidence as to personal transactions with a deceased party.*

The mere fact that a testator was weak and easily influenced does not, in itself, raise the presumption that undue influence was exercised over him by those who surrounded him at the time of the execution of his will, simply because the will was unsatisfactory to his family, in that it made a stranger the chief beneficiary.

The mere fact that an opportunity of exercising undue influence over a testator has been afforded, and that benefits have resulted to those who had the opportunity of exercising such influence, by no means raises a presumption that such influence was exercised.

The mere fact that the person who was counsel for the testator is the counsel for the beneficiary under the will, contested on the ground of undue influence, and may be interested in the maintenance of the will, does not raise a presumption which it is necessary for the beneficiary to rebut.

The rule that transactions *inter vivos* between persons, one of whom is dependent upon and subject to the control of the other, naturally excite suspicion, and that, when the situation is shown, there is cast upon the party claiming the benefit or advantage the burden of relieving himself from the suspicion thus excited and of showing that the transaction was free from undue influence, and that the other party acted without restraint and without coercion or pressure, direct or indirect, of the party benefited, does not apply, in all its strictness at least, to gifts by will.

The validity of a will does not depend upon the correctness of the testator's information as to his surroundings at the time of making the will, and it is immaterial, so far as the question of the validity of the will of a testator, in other respects competent, is concerned, whether he was or was not mistaken in reference to the conduct of his family towards him.

The erroneous admission of evidence of the attorney who drew the will and was the counsel for the testator, in reference to personal transactions between himself and the testator of a professional character, other than the circumstances immediately surrounding the execution of the will of which he was a witness:

*Held*, not to call for a reversal, on an appeal from the surrogate's decree admitting the will to probate, when it is apparent from the whole case, irrespective of the evidence improperly received, that the will was properly admitted to probate. (Code of Civil Pro., § 2545.)

Relationship to a party in interest does not bring a person within the prohibition of section 829 of the Code of Civil Procedure against testimony as to personal transactions with a deceased party.

*Semble*, that there is no authority for the proposition that where testamentary disposition is shown, the parties interested in disputing such disposition have a right to testify as to personal transactions between the testator and themselves tending to show that the facts, stated by the testator in his will as the reason for his testamentary disposition, were untrue.

APPEAL by the contestants, Fannie M. Bedlow and others, the widow and heirs-at-law of Alfred Bedlow, deceased, from the decree of the surrogate of New York county, entered in his office on the 16th day of January, 1892, admitting to probate a certain written paper purporting to be the last will and testament of Alfred Bedlow, deceased.

The respondent, Sarah A. Stillwell, is the proponent of the will. One clause of the will in question is as follows:

*Fourth.* As my wife, Fanny M. Bedlow, my daughter, Florence Townsend, my son, Alfred Bedlow, Jr., and my daughter, Julia A.

Frothingham, have, to the best of their respective abilities, endeavored to prevent me, and have prevented me, from possessing and enjoying my own property, and have otherwise treated me with gross disrespect and ingratitude, and as my wife has unjustly commenced and is prosecuting a suit against me for a divorce, now, in order to show to them and to others my appreciation of such disrespect and ingratitude, I do hereby give and bequeath the sum of one dollar ($1) to each of those four persons.

The letters referred to in the opinion as the letters of August fourth and sixth are as follows:

" GT. BARRINGTON, 4th *August*.

" MY DEAR ALF.:

" I do not know that you will even give one moment's thought or glance to these few words I wish to say to you. But I can no longer restrain the promptings of my heart to tell you how deeply I regret the step I have taken, and if there is any way in which I can make reparation I most willingly and gladly will do so forthwith, for my heart is sadly at variance with everything connected with it. It may be too late, for you may have already cast me from your memory and wish never to recall any of the old days; but here, where I am amid the scenes and recollections of my early years, and the many, many changes that have taken place, all comes back to me, and I feel the dreadful sense of loneliness — that need of someone to lean upon, that protection which every wife ought to have who has been faithful to her marriage vows. I have never yet found, and never shall, anyone to take your place, and I have never in word, thought or deed done anything to forfeit your respect or name; and I sincerely beg that you will forgive me for the part I have taken in this unfortunate suit, and, if not too late, take me to your heart again; let us be friends and live as husband and wife should live, and so go down the hill of life together, however long or short it may be; it is certain that either one of must be called before long, so let us do whatever we can to make one anothers departing years brighter and better; I do not believe that either one could go down to the end living as we now are with a satisfactory conscience, and my desire is to right whatever wrong I may have done, if possible.

" I am staying here very quietly in my old native town; my dear father's health is very, very feeble; indeed, we feel that his days

are almost numbered; but if you feel inclined to see us I know he will be glad to see you once again, for he knows nothing of what has occurred between us. I trust you will receive this letter in the kindly spirit in which it is written.

"Yours, very truly,

"FANNY."

"NEW YORK, *August* 6th, 1891.

"DEAR FANNY:

"Your note of August 4 was received yesterday, and I have very carefully considered all that you say and all that has occurred during the past few years. After such consideration I have finally and unchangeably decided that we cannot now live together as man and wife, and that any further discussion of the subject at present would result only in useless pain to both of us. I have come to this decision because I am sure that your disposition cannot, in your present frame of mind, harmonize with mine; that we might be as unhappy together in the future as we were in the past, and that our future peace and comfort will be best assured by our continued separation (at least for a time). While I cannot now live with you as you propose, I shall not neglect my duty to do the best I can towards providing for your support and comfort. That I have never been unmindful of such duty is shown by the facts that I, on May 28, 1890, submitted to your lawyer, Mr. Duer, my proposal to make you suitable payments out of my income, and that on June 4, 1890, I commenced weekly remittances to you, which were continued until the people at 1495 Broadway refused to receive the letters; I desire to provide for your wants and I inclose a proper paper giving to you all I can afford to give; if you will sign it and return it to me by mail I will immediately commence the payments and will continue to send them to you regularly from time to time at any place where you may be; I would gladly make the payments larger and will increase them when I can afford to do so, but I can do nothing more at present. You say in your note 'how deeply I regret the step I have taken, and if there is any way in which I can make reparation I most willingly and gladly do so forthwith.'

"The first step toward such reparation will be to stop this disgraceful divorce suit by signing and sending to me the inclosed letter to your lawyer, and the inclosed paper to use in court, if necessary; this

should be done immediately, because my answer must be served within a few days, unless your suit is discontinued ; the next step should be to rid yourself from those who have by their pernicious advice led you into your present unfortunate condition.   You ask my forgiveness, and that we may be friends ; I freely forgive the errors of the past, and I desire to be and will always be your friend ; let us again be at peace with each other and patiently wait and see what the future may have in store for us; I trust you will not delay answering this, as such delay might cause action that would force us still further apart.

"Yours afftly,

*W. A. Duer,* for the contestants, appellants.          "ALF."

*G. W. Stephens,* for the proponent, respondent.

VAN BRUNT, P. J. :

On the 16th of May, 1891, Alfred Bedlow died in the city of New York, leaving him surviving his widow and three children. He left a will bearing date the 4th day of August, 1890, whereby he appointed one Sarah A. Stilwell the sole executrix of the will, and after giving his wife and children one dollar apiece, he left a legacy to his niece, and the residue of his property he devised and bequeathed to said Sarah A. Stilwell.   The probate of the will was opposed by the widow and children of the testatrix upon the usual grounds.   None of these grounds, however, seems to be insisted on upon this appeal, except that the execution of the will was procured by undue influence.   And in the discussion of this question, it is necessary that the court should consider the circumstances surrounding the testator at and about the time of the execution of the will, and subsequent thereto.

It is urged that the testator was weak and easily influenced by those who surrounded him, which fact is a circumstance undoubtedly to be taken into consideration with the other evidence.   But the mere fact that he was weak and easily influenced does not, in itself, raise the presumption that such influence was exercised simply because a will, such as was satisfactory to the appellants, had not been made by the testator.

Upon examination of the evidence in this case, it does not seem to have been satisfactorily established that the testator was so unusu-

ally weak, as is claimed by the appellants. It is true, that several witnesses testified that he was weak and vacillating, and so impressed with those he was with that he was very apt to do as they told him. But it also appears from the evidence in respect to his relations with his family, that he had, to a very large extent, a will of his own, and a pertinacity of purpose which was quite the reverse of the weak, vacillating and easily influenced mind, which the testimony of some of the witnesses would leave us to believe the testator possessed. And while it is undoubtedly true that it is always difficult to produce testimony showing undue influence over a testator; yet the mere fact that the opportunity of exercising undue influence has been afforded, and that benefits have resulted to those who had the opportunity of exercising such influence, by no means raises a presumption that such influence was exercised.

It is assumed by the argument of the learned counsel for the appellants that because the counsel for the testator was the counsel for the beneficiary under the will, and because such counsel might be interested in the maintenance thereof, therefore, there is a presumption arising which it is necessary for the beneficiary to rebut. In this he confuses the rule which pertains to contracts or gifts *inter vivos* which does not apply to gifts by will. It is true that transactions *inter vivos* between guardian and ward, attorney and client, trustee and *cestui que trust* or persons, one of whom is dependent upon and subject to the control of the other, naturally excite suspicion, and when the situation is shown then there is cast upon the party claiming the benefit or advantage the burden of relieving himself from the suspicion thus excited and of showing that the transaction was free from undue influence and that the other party acted without restraint and without coercion or pressure direct or indirect of the party benefited. But, as already said, this rule does not apply, in all its strictness at least, to gifts by will. And in the *Matter of the Will of Smith* (95 N. Y., 516) it was held that the mere fact that the proponent who had benefited by the will was the attorney of the testatrix did not create a presumption against the validity of the legacy given by her will. But in that case, it being shown that the testatrix was a person of advanced years and infirm mentally and physically and had made her attorney the principal beneficiary, and it appearing that this was contrary to previously expressed

## 414                MATTER OF BEDLOW.

testamentary intention, that the attorney was the draughtsman of the will and took an active part in procuring its execution and that the testatrix acted without independent advice, it was held that the burden was imposed upon the attorney of satisfying the court that the will was the free, untrammeled, intelligent expression of the intention of the testator — a situation very different from that which the proof in the case at bar discloses.

It appears in the evidence in this case that on the 5th of June, 1890, a short time prior to the execution of the will in question, the testator had executed a will of a similar import, that he had been upon bad terms with his family for a considerable length of time, that attempts at reconciliation were resorted to and contrition expressed on both sides, but without resulting in anything, except further or more complete estrangement, a striking illustration of which is presented by the letter of the wife of the testator, bearing date the 4th of August, 1890, and the reply of the testator of the 6th of August (claimed to be 1891, but which must have been 1890 as the testator died in May, 1891), which resulted in a reference of the matter to the wife's attorneys.

It is true that in 1886 he executed a trust deed in which he claimed he attempted to make provision for his family. But he also endeavored to set this trust deed aside, and litigation was had arising from the claim of improper treatment by his wife and family. And for the purpose of explaining the reason why no provision was made for them he expressed his sentiments in the will in question, and this was in harmony with other statements which had been made by him. It is entirely immaterial, so far as the question as to the validity of this will is concerned, whether he was or was not mistaken in reference to the conduct of his family towards him. The validity of a testator's will does not depend upon the correctness of the information as to his surroundings at the time of making the will. If any other rule prevailed it certainly would open a wide field of investigation in the case of the probate of a will to ascertain whether the testator was correctly informed as to the conduct of every person who might think he had a claim upon the testator's bounty. This point is strikingly illustrated by the case of *Clapp* v. *Fullerton* (34 N. Y., 190), in which it was held that it was not sufficient to justify the rejection of a will that the testator, in other

respects competent, entertained the mistaken idea that one of his daughters was illegitimate, if it was not the effect of insane delusion, but of slight and inadequate evidence acting upon a jealous and suspicious mind; and an examination of the facts of that case shows how far the court has gone for the purpose of upholding a will in the absence of evidence showing the exercise of undue influence.

It is said " the right of a testator to dispose of his estate, depends neither on the justice of his prejudices, nor the soundness of his reasoning. He may do what he will with his own, and if there be no defect of testamentary capacity, and no undue influence or fraud, the law gives effect to his will, though its provisions are unreasonable and unjust."

But it is claimed that the decree should be reversed because of improper rulings upon the part of the surrogate in reference to the admission and exclusion of testimony.

It seems to us that error was committed in permitting the evidence of Mr. Keeler, who was the attorney who drew the will, and was the counsel for the testator, in reference to personal transactions between himself and the deceased of a professional character other than the circumstances immediately surrounding the execution of the will, of which he was a witness. (*Loder* v. *Whelpley et al.*, 111 N. Y., 239.) But this does not necessarily call for a reversal of the decree, if it be apparent upon the whole case irrespective of the evidence improperly admitted, that the testator was competent, and that the will was properly admitted to probate. It was held in *Clapp* v. *Fullerton* (*supra*) that, on appeals from the decrees of surrogates, the Supreme Court succeeds to the jurisdiction and authority of the old Court of Chancery. The review is in the nature of a rehearing in equity, and the admission of improper evidence on the original hearing furnishes no ground for a reversal of the decision, if the facts established by legal and competent testimony are plainly sufficient to uphold it. (*Schenck* v. *Dart*, 22 N. Y., 420.) This rule is also recognized in the case of *Foote* v. *Beecher* (78 N. Y., 158), in which it is stated that, upon an appeal from a surrogate's decree upon the probate of a will, the hearing is *de novo*, and the case may be determined upon the competent evidence appearing, disregarding such as is incompetent. (Code of Civ. Pro., § 2586.)

In the *Matter of Smith* (95 N. Y., 516) the change in the law

introduced by the Code is noticed.   The last clause of section 2545
of the Code declares that no decree or order of a surrogate shall be
reversed for an error in admitting or rejecting evidence, unless it
appears to the appellate court that the exceptant was necessarily
prejudiced thereby.

Before the Code, the admission of incompetent evidence was pre-
sumptively injurious.   But the section in question seems to have
changed this presumption.   In the case of Smith it is said, under
this section, that when the court of review finds that incompetent
evidence has been received, or competent evidence rejected, it then
becomes its duty to determine whether the error prejudiced the
party against whom it was committed.   If it appears to the court
that it did not, then its duty is plain.   If, on the other hand, the
evidence erroneously admitted or rejected was important and mate-
rial, and the court cannot see that, notwithstanding the error, the
judgment is right, or they entertain a reasonable doubt upon the
subject, then a case is presented where the party excepting is clearly
prejudiced within this section.   He was deprived of the opportunity
of having his case decided upon competent and material facts.

Now, if we strike out all the testimony of Mr. Keeler in refer-
ence to personal transactions between himself and the testator, it
in no way affects the conclusion which must necessarily be arrived
at from the evidence which properly stands.   In speaking of the exclu-
sion of the testimony of Mr. Keeler, we do not intend to say that the
affidavit of Mr. Bedlow, sworn to on the 16th of March, 1891, was
improperly admitted.   That was evidence, independent of testi-
mony of any personal transactions between Keeler and the testator,
as a declaration in the form of an oath of the feelings which the
testator entertained towards his family.

It is further claimed that the exclusion of the evidence of the
appellants herein of personal transactions with the testator was
error, because they had a right to show that the testator was mis-
taken in respect to their attitude towards him, and had no grounds
or reasons for the statements contained in his will, and that the
widow and children were entirely justified in their course.   But we
fail to find any authority for the reception of any such evidence.
Section 829 expressly provides the only cases in which a person
interested in the event may be examined concerning personal trans-

actions or communications between the witness and the deceased; and they are, so far as applicable to this case, only where the executor or administrator or person so deriving title or interest is examined in his own behalf concerning the same transaction or communication. In the case of *Smith* v. *Christopher* (3 Hun, 585), which is referred to as an authority to support the right of these contestants to testify, all that was held was that, if a party mentioned in (as it was then) section 399 of the Code, testifies to declarations of a deceased person in his own behalf, the prohibition does not apply to counter declarations offered by the adverse party.

There was no evidence of any person interested in this proceeding, if we except that of the attorney (which evidence the court has already stated should not have been admitted) showing declarations upon the part of the testator in favor of his testamentary disposition.

It is true, it is claimed by the appellant, that Mrs. Stilwell, the mother of the chief beneficiary under the will, comes within the prohibition of the section because of her relationship to the beneficiary. But we fail to find that the courts, have by judicial decision, legislated to the extent claimed. The language of the section of the Code upon this subject certainly embraces nobody but the parties in interest, and relationship has never yet been held as a disqualification.

Attention is called to the case of *Potts* v. *Mayer* (86 N. Y., 302), as an authority in favor of the contention of the appellants. But in that case the testimony of a deceased party taken upon a former trial was read in evidence, and it was because such testimony was read in evidence in regard to the transaction which was under consideration that the witness was allowed to testify in respect thereto.

The case of *Lewis* v. *Merritt* (98 N. Y., 206) has no application to the case at bar. In that case the executor bringing an action in his representative capacity, testified to the existence of a certain state of things, and the defendant was refused the opportunity of showing by his own testimony that such state of things did not exist, and the court held that to be error, upon the ground that the prohibition of section 829 does not extend so far as to prevent a party from testifying to extraneous facts and circumstances, that a witness for the adverse party has testified to, even though he is thereby called upon

to negative the existence of personal transactions and communications between himself and the deceased.

In the case of *Marsh* v. *Brown* (18 Hun, 319), which was an application by a child for his share in his father's estate, the executor claimed to deduct a sum alleged to have been advanced to him, and to prove such advance produced an entry made by the testator in one of his books, and it was simply held that the child was entitled to testify in reference to such advancement, and to explain or deny the entry. But we nowhere find any authority for the proposition that where testamentary disposition is shown, the parties interested in resisting such disposition have a right to testify themselves as to personal transactions between the testator and themselves, tending to show that the facts stated by the testator as the reason for his testamentary disposition were untrue.

We do not think, therefore, that any error was committed by the court below which calls for a reversal of the decree in question, and it should be affirmed, with costs.

O'BRIEN and FOLLETT, JJ., concurred.

Decree affirmed, with costs.