In the Matter of the Probate of the Last Will ·and Testament of JULIA O'DEA, Deceased.

JULIA CONDON and Another, Appellants, *v.* TIMOTHY F. NEVILLE and Others, Respondents.

*Instrument executed by a feeble person as his will — the execution and preparation thereof will be carefully scrutinized — erroneous belief of a testator.*

The courts will scrutinize carefully the circumstances attending the preparation and execution of an instrument offered for probate as the last will and testament of a decedent who was feeble and advanced in years at the time of the execution thereof.

An erroneous belief suggested as a reason for the disinheritance of an heir, in order to affect the validity of the will of a decedent, must be shown to be an insane delusion.

APPEAL by the contestants, Julia Condon and another, from a decree of the Surrogate's Court of the county of New York, entered in the New York County Surrogate's Court on the 17th day of May, 1894, admitting to probate a certain instrument as the last will and testament of Julia O'Dea, deceased.

*Henry B. B. Stapler,* for the appellants.

*Francis L. Wellman,* for the respondents.

Decree affirmed, with costs, on the opinion of the surrogate.

Present — VAN BRUNT, P. J., FOLLETT and PARKER, JJ.

The opinion of the surrogate was as follows: ·
FITZGERALD, S.:

The paper offered for probate is dated May 23, 1893; the issues raised will be decided mainly upon the testimony of the witnesses, who, to my mind, are unbiased, and who have no motive, either pecuniary or by reason of ties of kinship, to warp or influence their evidence. The first subject for consideration is the question of the execution of the paper. Mr. Neville and his son, who are the subscribing witnesses to the paper of May twenty-third, testify to its

First Department, February Term, 1895.　　　[Vol. 84.

subscription, publication and attestation. They also express the opinion that testatrix was of sound mind at the time the will was executed. The paper bearing date September 3, 1891, and prepared by the same draughtsman, if I recall the testimony correctly, is in some degree different from the one offered for probate. It was admitted in evidence as an expression of testatrix's then state of mind as to her purpose with regard to her property, and in considering the case I shall refer to that document as well as the one under consideration. By the first paper, that of September third, she bequeathed a legacy to Father Flood of $300. She also made provision for her nieces, one of whom was Bridget Cronin, now deceased. Of her, as appears by the testimony, she was very fond. After the death of Bridget, Mrs. O'Dea went to the office of Mr. Neville, and asked that her will be reformed, withdrawing the bequest made to the nieces. In my judgment her feeling for her niece Bridget Cronin was the motive for including the others in that will. I reach this conclusion on the testimony of witnesses whom I regard as unbiased. Bridget having died, she executed the will of May 23, 1893, and in it increased the legacy to Father Flood from $300 to $1,000.

It is a sound rule that in the case of a feeble person, far advanced in years as was Mrs. O'Dea — I think she was nearly eighty-five — the court should scrutinize carefully the circumstances attending the preparation and the execution of the paper which is offered for probate. As I have suggested, the subscribing witnesses are emphatic in stating their belief that she had ample mental capacity.

In this connection I may refer to the testimony of Mr. McQueeney, called by the contestants, who, from what I could see of his demeanor on the stand, was an indifferent party, unprejudiced and unbiased. Either under the direct or the cross-examination, it was drawn from him that he made visits to Mrs. O'Dea, whom he had known since 1848. On visits made to her three months previous to June, 1893, which would be about the commencement of April, he had a conversation with her relating to matters of family history. He stated that he took no special interest in the subject of the conversation. He had another conversation with her in June, 1893, when, I think, she invited him to partake of her hospitality. He was then with her about two hours. He says that her conversations

were sensible and rational. She was dissatisfied with the management of her house and with her servants, and said she was going to break up and go into one of the institutions which she has named as a beneficiary in her will. That is important in showing her mental capacity. It shows also that she had an appreciation of those institutions. She concluded the conversation by stating that Father Flood would take care of her, and that he had charge of all her matters.

With reference to her alleged delusion, the rule of law I announced in the late case of Joseph F. Johnson, is, in substance, that an erroneous belief suggested as a reason for the disinheritance of an heir, to affect the validity of the will of a testator, must be shown to be an insane delusion.

The young girl Condon, respecting whose condition it is claimed that testatrix was laboring under a delusion, impressed me as being a person not of a robust constitution. She admitted on her examination by proponents' counsel that she was not always strong, and that she had pulmonary trouble. Her voice showed it. This satisfactorily accounts for the not unreasonable supposition of the testatrix that the girl would not live to enjoy a legacy if one was provided for her. Mrs. Levy, the landlady of the testatrix, testified that Mrs. O'Dea came to her and paid her rent every month; that she knew what she gave her, and if she ever gave her a dollar more than she ought, she insisted on the correct change. She did not tell Mrs. Levy at the time the will was made that she had been to a lawyer's office. We know that when a person makes a will he does not proclaim it from the housetop, nor does he inform those whom he has ignored that there is a will in existence. It is not at all improbable that he would fail to inform those for whom he had provided. The making of a will is frequently an act known to those only who participate in its execution until after the testator's death. The fact that Mrs. O'Dea did not inform her nieces or Mrs. Levy that she had made a will has, to my mind, no significance. If she had told everybody in the house who her beneficiaries were and whom she had not provided for, it would have been strange.

Another fact which goes to show Mrs. O'Dea's mental condition is her attendance at the different banks.

On the 8th day of February, 1893, she personally attended at the Emigrants' Savings Bank in this city and drew therefrom twenty-two dollars and fifty cents on a draft which she had signed. She also, on August 12, 1892, and on March 23, 1893, personally called at the Seamans' Savings Bank in this city and drew therefrom on drafts signed by her the respective amounts of ninety-one dollars and twenty cents and sixty dollars.

The testimony of the nieces is open to this criticism — it is that of interested parties. I think from a consideration of it and of the other evidence in the case it is my duty to decide the case, in the main, upon the testimony of witnesses who are disinterested and whose evidence I am convinced is unbiased and trustworthy. On the evidence I am satisfied that Mrs. O'Dea had testamentary capacity. She knew of what her property consisted, knew her relatives, and it is proved by a number of the witnesses that she was a woman of considerable intelligence. On a review of the whole case I am satisfied that the will was properly executed in accordance with the requirements of the statute; that Mrs. O'Dea had capacity to execute it, and that she was not unduly influenced.

A decree may be presented admitting the will to probate.