## In re DRAKE'S WILL.

(Supreme Court, Appellate Division, Fourth Department.    November 22, 1899.)

1. WILLS—UNDUE INFLUENCE—TESTAMENTARY CAPACITY—QUESTIONS FOR JURY.
    Where a will offered for probate is attacked for undue influence and
    lack of testamentary capacity, and it appears on appeal, from a decree
    admitting it to probate, that the disposition of the questions of fact raised
    by the evidence is not free from doubt, and that the surrogate's decision
    is not entirely satisfactory, the questions of fact will be sent to a jury for
    determination.

2. SAME—COSTS.
    The costs in such case should abide the event of a new trial, and be
    payable out of the estate.

Appeal from surrogate's court, Jefferson county.

In the matter of the probate of the will of David Drake, deceased.
There was a decree admitting the will to probate, and Joseph H.
Drake and others appeal.    Reversed.

Joseph H. Drake and some 18 others appeal from the decree of the surro-
gate's court of Jefferson county made on the 25th day of September, 1897,
which adjudges that an instrument purporting to be the last will and testament
of David Drake, deceased, was properly executed, and that it is genuine and
valid, and that the deceased at the time of the execution of the instrument
was competent to execute the same, and was not under restraint or undue
influence, and had testamentary capacity to ma..e a will disposing of his per-
sonal property, and admitting said will to probate; and from all of said de-
cree, "except so much as awards costs and expenses to the parties who ap-
peared and presented said will for probate." On May 18, 1896, David H.
Drake and Alonzo T. Drake presented their petition, as executors, to the sur-
rogate's court of Jefferson county, in which they alleged that David Drake died
in the town of Philadelphia on the 24th of April, 1896, having made and
executed his last will and testament, in which petition were stated the heirs
and next of kin of the deceased; and praying that a citation issue out of that
court to the proper persons, pursuant to statute, to appear and attend the pro-
bate of the said last will and testament. Upon the return of the citation, Joseph
H. Drake and the other contestants appeared and disputed the validity of the
said will, and filed a statement in writing of the grounds of opposition to the
same, in which they object to the instrument as not made and executed ac-
cording to law, and that it was not in fact duly and legally executed, and that
it was not published, and that it was "not the free act and deed of said de-
ceased; that at the time said instrument is alleged to have been made, ex-
ecuted, and published, said deceased was not of sound and disposing mind and
memory, and was incompetent to make, execute, or publish a valid will; that,
at the time said instrument is alleged to have been made,    *    *    *    said
deceased had lost his mind and memory, could not write or speak intelligently
or understandingly, and said instrument was not signed, executed, or pub-
lished by said deceased; that the alleged making, execution, and publishing of
said instrument was instigated, obtained, and procured through and by means
of undue influence, artifice, duress, and fraud practiced upon said deceased,
and said alleged will is not the free and voluntary act and deed of said de-
ceased, and is invalid and void." After the hearing in the surrogate's court
several requests to find were presented to the surrogate and refused, and an
exception to such refusal allowed to the contestants. After hearing voluminous
testimony, the surrogate made findings of fact and conclusions of law, viz.:
"First, that the testator, David Drake, at the time of the execution of the will
in question was of sound mind, had testamentary capacity, and was in all
respects competent to make and execute a last will and testament; second, that
the said will presented for probate herein was duly executed by said testator,
David Drake, on the day that it bears date, in compliance with the statutes
governing the execution of last wills and testaments; third, that the said tes-
tator, David Drake, was not under any restraint, and was uninfluenced by

any person or persons in the making and execution of said will." As conclusions of law: "First, that said will must be admitted to probate as the last will and testament of said David Drake, deceased; second, that a decree be entered herein admitting said will to probate, and establishing and confirming said will as a good and valid will of personal property, and awarding letters testamentary thereon to the executors named in said will." A decree in accordance with the findings of the surrogate was entered. Exceptions were filed by the contestants to the findings of fact and to the conclusions of law stated by the surrogate.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

William F. Porter, for appellants.
Henry Purcell, for respondents.

HARDIN, P. J. On the 24th of April, 1896, at the residence of his nephew Alonzo Drake, in the town of Philadelphia, David Drake, at the advanced age of 91 years (a bachelor), died; having at the time of his death about $18,000 of personal property, and 965 acres of land, worth in the neighborhood of $40,000, which property he had accumulated in the course of his long life. On the 9th of March he was taken ill, and a physician was called to attend him. For several days he was confined to his bed, having catarrhal pneumonia. On the 16th of March his physical condition was quite critical, and his physician indulged in apprehensions that his end was near, and that he was liable to die at any time. When knowledge of such fact became known to his nephews, one Acheson was sent for (a justice of the peace), and one John J. Kinney (another justice of the peace), to prepare papers to be executed by the testator. They reached the house where the deceased was ill in the afternoon of the 16th of March; and Acheson undertook the task of drawing several deeds to convey the deceased's real estate to the several grantees mentioned in the deeds, and Kinney undertook the task of preparing a will for the deceased which should dispose of his personal property. When Kinney entered the room of the testator, he found him in a debilitated and dozing condition in his bed, disinclined to give the details for the preparation of his will; referring Kinney to the two nephews, David H. and Alonzo T. Drake, to whom the testator said he had communicated his wishes in respect to the provisions of the will to be prepared. Thereupon Kinney held an interview with the nephews, and sought to ascertain from them the directions which had been given by the testator to them in respect to the terms of the proposed will. They repeated to him the names of several legatees, and the several sums that it was proposed they should receive from the testator. When some of the names were mentioned, a discussion arose between the nephews as to the amount that should be given; one of the nephews asserting the amount, and in reply thereto the other nephew saying that the amount was too large. As a sequence of the conversation with the two nephews, the will in question was prepared by Kinney. The will thus prepared provided for the payment of the debts of the testator, and contained a provision bequeathing to the niece of the testator, Fanny Reese, the sum of

$1,000; and to Jane E. Shumway, $1,000; to J. Henry Drake, $500; to Catherine Crabb, $500; to Melisia Vandewalker, $500; to J. F. Drake, $500; to Alexander Drake, $500; to Ira Cooper, $100; and also numerous other small legacies, amounting in the aggregate, with those mentioned, to the sum of $8,600. The will then contains a provision that, in the event there is not enough personal estate to pay the bequests, it is directed "that each shall receive their proportion pro rata; and, if there is more than enough, then I give and bequeath to Alonzo T. Drake and David Henry Drake the remainder, each share alike. I also give and bequeath to Alonzo T. Drake my gray horse, also harness, buggy, and cutter, together with a quantity of oats stored on the Emmit Wilson farm; and I do further order and direct that my executors shall have two years to pay the above-named bequests after my death." The will further provided, viz.: "Likewise, I make, constitute, and appoint David Henry Drake and Alonzo T. Drake, without giving bonds, to be my executors of this, my last will and testament; hereby revoking all former wills by me made." The instrument purports to be signed by the testator, viz. "David $\overset{\text{his}}{\underset{\text{mark}}{\text{X}}}$ Drake," and to have been witnessed by De Witt C. Rodenhurst. Subjoined to it is the usual attestation clause, signed by Thomas J. Acheson and John J. Kinney. Besides the advantage of being executors, it is apparent that David Henry Drake and Alonzo T. Drake were substantial beneficiaries under the will as prepared. On the 16th of March, when the will was prepared, the deeds that were prepared carried from the testator all of his real estate, except the Slocumville farm; and, as that was overlooked or forgotten on the 16th of March, a deed was prepared on the 17th of March transferring the same to David H. and Alonzo T. Drake. At Alonzo's house when the deeds were prepared and the will prepared there were present David Henry, Alonzo T., who were the principal beneficiaries, and who were grantees in the deeds of three-fourths of the real estate of the testator, and Mr. Acheson, Dr. Rodenhurst, the attending physician, and John J. Kinney. Dr. Rodenhurst appeared at the house on the morning of the 16th of March, and announced that a marked change had occurred in the condition of the testator. He was then failing rapidly, and growing weaker, and his voice was weakening. One of the deeds prepared on the occasion purported to transfer 272 acres of land, called the "New Boston Farm," to David Henry, supposed to be worth $40 an acre; other deeds were prepared, to Alonzo T., in which he was the grantee of 180 acres of land in the town of Philadelphia, worth about $30 an acre; and they also were grantees jointly of 200 acres of land in the town of Philadelphia, worth in the neighborhood of $40 per acre; and they were also grantees of land situate in the town of Leray, known as the "Slocumville Farm," containing 96 acres, and supposed to be worth $25 per acre. Thus, the deeds were made to carry to them some 748 acres of land. To Mrs. Virginia Wilson a deed for 100 acres was prepared, worth about $40 an acre; and to Hattie Fike, 117 acres, worth in the neighborhood of $40 an acre.

The evidence discloses that, in the haste with which the transactions of the 16th of March were carried forward, there was an oversight of the Slocumville farm, and a deed for that was prepared on the following day. The omission was discovered by David Henry Drake on the evening of the 16th, and he informed Kinney of the omission; and Alonzo asked Kinney to prepare a deed for that, and Kinney, on the night of the 16th, declined to do so, and, when he asked David and Alonzo who should receive that farm, they replied that they would take it. It appears the will and deeds were drawn in the room known as the "parlor," and the evidence indicates that the instructions for drawing the will were given to Kinney by David Henry and Alonzo T., exclusively, he not receiving any directions from the testator in reference to the terms of the will. The phraseology of the will seems to be plain and clear.

In section 2623 of the Code of Civil Procedure it is provided:

"If it appears to the surrogate that the will was duly executed; and that the testator, at the time of executing it, was in all respects competent to make a will, and not under restraint; it must be admitted to probate, as a will valid to pass real property, or personal property, or both, as the surrogate determines. * ⁑ ⁑"

Inasmuch as the surrogate has admitted the will to probate, it must be assumed that he determined that it was duly executed, and that the testator at the time of executing it was in all respects competent to make a will, and not under restraint. However, as this appeal is taken upon the facts, by virtue of section 2586 of the Code of Civil Procedure this court has the same power to decide the questions of fact which the surrogate had. The record before us is very voluminous. The taking of testimony occupied some twelve days in the surrogate's court. From a perusal of the evidence found in the record, we are of the opinion that grave questions of fact were presented for the determination of the surrogate in respect to the due execution, in respect to the testamentary capacity of the deceased, and in respect to his freedom from restraint, and as to whether undue influence was exercised upon him which induced the execution of the will in question. There is considerable evidence given by the proponents tending to sustain the conclusions reached by the surrogate,—especially the evidence which is given that the testator, after recovering from his depressed condition on the 16th of March, and continuing to live until the 24th of April, and when he was in apparently a normal condition, referred to the fact that he had executed a will, and that he had fixed up his business in the manner in which he desired, and declined to enter upon any new engagements. In re Green, 67 Hun, 527, 22 N. Y. Supp. 1112. We may assent to the contention of the learned counsel for the respondents that "because the testator was a man of advanced years, or enfeebled in mind or body, at the time of the execution of the will," no presumption can be indulged in against the will. And we may assent to his further proposition, that the real questions are, did the testator have sufficient intelligence to comprehend the condition of his property, his relation to those who were the objects of his bounty, and the scope and meaning of the provisions of the

will? If so, then the will was his free act, and it should be sustained. Horn v. Pullman, 72 N. Y. 269; In re Davis' Will, 91 Hun, 209, 36 N. Y. Supp. 344; In re McGraw's Will, 9 App. Div. 372, 41 N. Y. Supp. 481. In Re Folts' Will, 71 Hun, 493, 24 N. Y. Supp. 1052, it was said that there is no presumption against a will because made by a man of advanced years, that testamentary incapacity cannot be inferred from an enfeebled condition of mind or body, and that the burden of proof is upon the proponents of a will to show by prima facie proof a testamentary capacity at the time of the execution of the will. In the case in hand the proponents gave testimony which, if credited, established a prima facie case in favor of the will, so far as it relates to capacity of the testator at the time of executing the will in question. In determining the capacity of the testator in this case, as his health was impaired by disease and he was at an advanced age, it is the duty of the court to scrutinize all the evidence relating to the circumstances attending the preparation and execution of the will; and under the rule laid down in Re McGraw, 9 App. Div. 372, 41 N. Y. Supp. 481, by this court, and under the circumstances there detailed, as well as the circumstances here detailed, it is the duty of the court, "in determining questions of testamentary capacity, to look with greater care and solicitude into the case, and adopt a more rigorous rule, where the decedent was weak and suffering, than if he was in comparative health." In re O'Dea's Will, 84 Hun, 591, 33 N. Y. Supp. 463. The circumstances disclosed .by the evidence in this case challenge the most cautious and careful scrutiny in respect to all the features of the transaction of the 16th of March, when the will was prepared and executed; and the grave question in the case is whether there was an intelligent action on the part of the testator, which is requisite in order to warrant the conclusion that the instrument reflected his will and intelligence, or whether it was the product of another's mind. It is, therefore, in this case, very important to determine whether the testator was unduly influenced by those surrounding him at the time he was in apparent extremis. That the nephews took an active part in framing the will is quite apparent from the evidence, and that they exercised more or less influence upon him is manifest by the evidence which is found in the record.

In Re Seagrist's Will, 1 App. Div. 619, 37 N. Y. Supp. 499, affirmed in 153 N. Y. 682, 48 N. E. 1107, the right of parties situated as these nephews were towards the testator to exercise influence was considered, and it was said:

"Persons who occupy intimate and affectionate relations with any individual have the right, by personal request, by fair argument, and even by decent importunities, to procure a will to be made. The fact that they have done so is no argument against the validity of the paper, provided these importunities do not proceed so far as to overpower the will of the testator, and induce him to do the thing which he would not have done but for these importunities, and to substitute the will of the beneficiaries in the place of his own uncontrolled judgment. Parfitt v. Lawless, L. R. 2 Prob. & Div. 462; Tyler v. Gardiner, 35 N. Y. 559. If the result of the importunities is to simply cause the testator to act, and to convince him of the propriety of making the will in the way in which he finally does make it, so that at the last it is his own act and represents his own judgment, the will is nevertheless good."

Where a will is alleged to have been obtained by undue influence, the burden is upon the party making the allegation; and such party is not only bound to prove that there was an opportunity to exercise undue influence, "but that it was actually exerted, and that the effect of it was to overpower the will of the testator, and procure him to make a disposition of his property other than that which he would have made if no influence was exerted, and which he would not have made if no such influence had been practiced upon him." In re Spratt's Will, 4 App. Div. 5, 38 N. Y. Supp. 329.

In Re Snelling, 136 N. Y. 515, 32 N. E. 1006, it was held that:

"What the law terms 'undue influence' must be such as overpowers the will of a testator, and subjects it to the will and control of another. It is not established by proof simply tending to show that the testator, acting from motives of affection or gratitude, gave his property to strangers to his blood."

The evidence offered by the contestants upon the subject of the actions and efforts on the part of the nephews to induce the making of the deeds and the execution of the will raises a question as to whether they transcended the rule laid down in the cases to which we have adverted. A solution of that question depends largely upon a full consideration of all the evidence relating to the transactions of the 16th of March, and whether certain inferences and deductions should be drawn therefrom which would be prejudicial to the proponents, or whether certain inferences and deductions may be drawn therefrom which would be favorable to the contestants, may be said to be a matter of some doubt. Inasmuch as we have reached the conclusion upon the whole evidence that the questions of fact ought to be submitted to a jury, who may view the witnesses and consider the different aspects of the evidence, we forbear to comment more at length upon the leading features of the testimony relating to the capacity of the testator, or the influence that was exercised upon him by the proponents. We think a careful consideration of all the evidence requires us to apply the rule which we laid down in the case of In re Dixon's Will, 42 App. Div. 481, 59 N. Y. Supp. 421. In that case we held, viz.:

"Where an instrument offered for probate as a last will and testament is attacked upon the ground of undue influence and lack of testamentary capacity, and it appears, upon an appeal from a decree admitting it to probate, that the disposition of the questions of fact raised by the evidence is not free from doubt, and that the surrogate's decision is not entirely satisfactory, the questions of fact will be sent to a jury for determination."

A careful consideration of the evidence in the record before us has led us to the conclusion that there is doubt whether the deceased, at the time he executed the will, had mental capacity and understanding of his relation to all the persons who might be the objects of his bounty, and as to whether the will was the product of an independent and intelligent understanding on the part of the testator. Having doubt upon the questions raised by the contestants in respect to the execution and the capacity of the testator, and whether any undue influence was exercised upon him, we have concluded that the questions should be submitted to a jury to determine. Having, therefore, concluded to reverse the decree of the surrogate upon questions of fact, we must, pursuant to section 2588 of the Code of

Civil Procedure, direct a trial by a jury of the material questions of fact arising upon the issues between the parties. In re Laudy's Will, 148 N. Y. 403, 42 N. E. 1061.

An order will be allowed directing a trial at a trial term in Jefferson county of questions arising in the case, to wit: (1) Was the instrument purporting to be the last will and testament of David Drake, dated March 16, 1896, duly executed by him? (2) Did he have testamentary capacity at the time of the execution of the instrument purporting to be his will? (3) Was the execution of the will of the decedent of March, 1896, procured by fraud, circumvention, or undue influence practiced upon him?

We think the costs of the appeal should abide the event of a new trial, and be payable out of the estate. In re Van Houten's Will, 11 App. Div. 211, 42 N. Y. Supp. 919; In re Dixon's Will, 42 App. Div. 489, 59 N. Y. Supp. 421.

So much of the decree of the surrogate's court of Jefferson county as is appealed from is reversed, and a trial of the questions stated in the opinion ordered before a jury at a trial term in that county, with the costs of this appeal to the appellants, to abide the event of a new trial, payable out of the estate. All concur.