erod, 3 Ch. Div. (1893) 348. In that case the testatrix recited in her will that she had settled upon her daughter, Ethel Jane Paton, a particular property, which in fact was still in her disposition. The will contained other recitals and bequests of other properties, and also a residuary bequest in favor of Charles Edward Ormerod. The Court of Appeal, affirming the decision of the judge below, held that the property mentioned in the recital as settled upon Ethel Paton, and which was still within the disposition of the testatrix passed under the residuary gift to Ormerod. The following is an extract from the opinion of Lindley, one of the three Lords Justices of Appeal:

"Now, the residuary bequest is expressed in terms wide enough to include whatever personal estate not otherwise disposed of by her will the testatrix might have at her death, whether she knew that she had it or not. She intended whatever was hers, and was not otherwise disposed of, to go to her residuary legatee. It is true that she did not intend this particular fund to go at once to him, because she thought she had settled it already, and that, therefore, it was not hers. She made a mistake. It was hers, and the residuary bequest in terms carries it. * * * But then it is said that to construe the will so as to include this fund in the residuary bequest will be contrary to several decisions, viz., Circuitt v. Perry, 23 Beav. 275. Harris v. Harris, Ir. R. 3 Eq. 610, Hawks v. Longridge, 29 L. T. N. S. 449, and Clibborn v. Clibborn, 9 Ir. Jur. 381. Certainly in each of these cases the courts held that a fund as to which a testator had made a mistake did not fall into the residue of his estate. But I cannot extract from those cases any principle of law which compels me to hold that there has been an intestacy in this case. In Circuitt v. Perry Lord Romilly seems to have intimated that a residuary bequest would not include property which a testator thought was not his. But this is a proposition which cannot be supported. In Harris v. Harris the principle was much more correctly expressed in the following language of the Vice Chancellor of Ireland: 'In considering this question the real point to be considered is that a residuary devisee is not to be excluded except by express words used by the testator in the will, showing an intentional exclusion of the property in question from the operation of the residuary clause. If the words fell short of that, the property passes under the residuary devise, and no residuary devise could be more extensive than this.' Even this language, however, does not go quite far enough. The intention to exclude must not be founded on a mistake as to the ownership of the property. It must be an intention to exclude the property, even if it is the testator's to dispose of. Notwithstanding Circuitt v. Perry and the other cases referred to, in which, in my opinion, sufficient effect was not given to a residuary clause, and which, therefore, I decline to follow, I am of opinion that the decision appealed from is correct, and that the appeal must be dismissed, with costs."

Having reached the above conclusions, there is no occasion to pass upon the second request for instructions pleaded by the executor. The answers of respondents Meredith Howland and James Roosevelt Roosevelt are overruled. Costs to the executor and residuary legatees.

Ordered accordingly.

(58 Misc. Rep. 103.)

. In re TREDWELL'S WILL.

(Surrogate's Court, New York County. February, 1908.)

WILLS—PROBATE—EVIDENCE OF EXECUTION.

A paper offered for probate was executed more than 32 years before the death of the party executing it. On the same day her unmarried sisters executed similar wills; the four wills giving all the property to the surviving sisters, and naming the survivors as executors. The will

was drawn by a reputable attorney, a brother-in-law of the deceased, and was duly witnessed. The proof of the subscription was satisfactory, and decedent appeared to have had testamentary capacity. *Held*, that the probate will not be denied because one sister present at the time of the execution of the instrument testified that nothing was said by decedent at the time that she remembered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 700–710.]

In the Matter of the Will of Sarah K. Tredwell. Probate decreed.

Blaudy, Mooney & Shipman (Charles Blaudy, Edmund L. Mooney, of counsel), for proponents.

Gautz, Neier & McKennell (Ernest G. Stevens, of counsel), for contestant.

BECKETT, S. Decedent was more than 70 years of age when she died, October 9, 1906, leaving as her only heirs at law and next of kin three unmarried sisters, Phebe E. (since deceased), Julia E., and Gertrude E. Tredwell, one brother, Samuel Lenox Tredwell (the sole contestant), a nephew and two nieces, children of one deceased sister, and another niece, Miss Elizabeth H. Nichols, a daughter of another deceased sister. This matter was tried by my predecessor, but he died before it was finally submitted. Pending the trial, and before the proponents Julia E. and Gertrude E. Tredwell were examined, he did express upon the record an opinion, in argument with counsel, that the factum of the will had been made out, and that no undue influence had been developed. After his death the attorneys for the various parties appeared before me in open court and entered into a stipulation on December 29, 1907, to the effect that they had no further testimony to offer, and that the testimony and evidence taken before Surrogate Fitzgerald should be resubmitted with the same force and effect as if originally taken before me. Thereafter I carefully read all of the testimony so taken, and the attorneys for the respective parties summed up the matter before me, and afterward filed briefs upon the facts and law which I have examined.

The propounded paper bears date and was executed July 1, 1874, more than 32 years before decedent's death, and on the same day decedent's sisters Phebe and Gertrude executed similar wills, and on the following day the sister Julia executed hers. Each of the four instruments was mutual in its character to the extent of giving all the property to the three others or to such of them as should survive, and named the survivors as executors. None of the four sisters ever married, and they were in July, 1874, all living together in the common ancestral home at No. 29 East Fourth street, where the two survivors still continue to reside. The will seems to be a perfectly natural one, especially so when we consider that the two other sisters in the family were married, and that the contesting brother seems not to have been upon very good terms with his sisters, and that he did not visit the decedent more than twice in the space of 20 years. The propounded paper was drafted by Effingham H. Nichols, a lawyer of repute and standing at this bar, who was a brother-in-law of these four sisters. It has a full attestation clause, and it was witnessed by three gentlemen, all of whom are now dead: William G. Sterling, also a lawyer of consider-

able reputation and eminence, and who had law offices with Mr. Nichols at No. 9 Pine street; Mr. Thomas M. Souther, by whom the propounded paper was engrossed, secretary of the central branch of the Union Pacific Railroad Company; and Mr. James H. Skidmore, a near neighbor of the Tredwell family. The proof was satisfactory both as to the subscription by the decedent and also as to the signatures of the three subscribing witnesses. Matter of Cottrell, 95 N. Y. 329. The wills of Phebe and Gertrude, executed the same day, have the same subscribing witnesses. That of Julia, which appears to have been executed on the following day, has another witness in place of Mr. Skidmore. Otherwise the signatures are by same hands and the engrossing of all three instruments is also by the hand of Mr. Souther.

As to the decedent's capacity, she overtaxed her strength about 1872 while driving a span of horses. This affected her lower spine and limbs, and she was more or less a confirmed invalid afterward; but during and after the year 1882, almost up to the time of her death, she was able to go about, spent her summers in the country, made calls, received visitors, shopped, and attended to her business affairs herself. She resided while in New York from about 1882 until she died, first at the Hotel Rossmore, and afterward at the Barrett House, now the Hotel Cadillac, where she died. In August, 1906, she consulted Charles M. Cannon, respecting the preparation and execution by her of a certain trust agreement whereby she gave $10,000 par value of railway bonds to the Trust Company of America, as trustee, for the benefit of Miss Quinlan (her maid and companion for 21 years), with remainder to the three sisters, the beneficiaries here. This trust agreement was executed by her, and by her own check she paid Mr. Cannon for his services. At the same time she consulted him about a new will, "asking various questions in reference to matters which would necessarily come to the mind of anybody making a will." He advised her, and also informed her that he was departing from the city for a few weeks, and nothing more was done by him about it. After her death said Elizabeth H. Nichols (daughter of Effingham H. Nichols) brought to Mr. Cannon the propounded paper, and also a pencil memorandum written by the decedent herself and addressed in her own hand, "W. & T. for Mr. Cannon" (Proponents' Exhibit D), which alone (but there is much other evidence to the same effect) is convincing proof of the decedent's testamentary capacity. It will be noted, also, that in this pencilled memorandum, which she evidently intended to have incorporated in a new will, she gives the contestant but $500, while to said three sisters and the survivor (or, as she puts it, "whether all three survive me or only two or one") she gives $15,000. I find that the decedent had testamentary capacity.

Undue influence was not established by the contestant. The contestant's counsel has a theory, but to my mind no proof, of undue influence. Four mutual wills executed substantially at the same time are in themselves almost an absolute presumption that no undue influence was exercised. Publicity is not a field where undue influence flourishes. Matter of Drake, 45 App. Div. 206, 60 N. Y. Supp. 1020; Matter of Nelson, 97 App. Div. 212, 89 N. Y. Supp. 865; Matter of Martin,

98 N. Y. 193. The contestant in this matter pending the trial demanded the production by the proponents for examination among others of the proponents themselves and their sister, Phebe E. Tredwell, since deceased (whose will has also been contested before me by this same contestant). Phebe E. Tredwell was never examined. She was seriously ill when the examination took place. The proponents were examined before an assistant to the surrogate (no objection having been made under section 829, Code of Civil Procedure), and the contestant proved by proponent Gertrude E. Tredwell that she was in the room and signed her will at the same time that the decedent subscribed hers, and she further testified:

"Do you remember anything that was said there? A. No; there was nothing said, except signed the will, and my sisters signing their names—we signed our names.

"Q. Nothing was said by Sarah at that time? A. No.

"Q. Nothing said by any of you? A. Not that I remember."

Upon this testimony contestant argues that the will was not published, and that the witnesses were not requested to sign pursuant to the statute; but the same witness testified in answer to questions put to her by her counsel that she did not remember anything that was said, but that she did remember Messrs. Sterling, Souther, and Skidmore, and that they were present upon this occasion. It is not strange that this lady, over 70 years of age, fails to remember incidents which occurred 32 years ago, and I do not consider her testimony as such positive testimony or at all of such a character as would be sufficient or would tend to overthrow the presumption of the formal execution of the will which the cases allow us to deduce from an attestation clause in due and proper form. Matter of Oliver, 13 Misc. Rep. 466, 34 N. Y. Supp. 706, and cases cited. In the case of Woolley v. Woolley, 95 N. Y. 231, the testimony was given within a year after the alleged codicil was executed, and was, as appears from the opinion, in its nature positive and exact, and Earle, J., in writing the opinion, said:

"This evidence was given within about a year after the alleged codicil was executed, and hence this case is not to be treated like one where an attempt is made to prove a will after the lapse of a long time, when witnesses may not be able to testify fully to the statutory requirements from a failure of memory. In such a case a regular and full attestation clause, with very slight proof of confirmatory circumstances, may be held sufficient."

I conclude that the proof in this case is sufficient, and that the will should be admitted to probate. Present a decree and decision upon notice.

Probate decreed.