In the Matter of the Estate of Isaac O. Shumway, Deceased.

Surrogate's Court, Kings County, November 17, 1930.

430

*Clarence A. Spear* [*Joseph A. Kennedy* of counsel], for the petitioner.

*John Kochendorfer*, for Mildred A. Shulhof, contestant.

WINGATE, S. The chief basis of the contest in this proceeding, while by no means unprecedented, is sufficiently unusual as to furnish a welcome variation from the commonplace of objections to testamentary dispositions. The first stated grounds of contest are the customary ones — that the propounded instrument is not the last will of the testator and that it was procured by undue influence. To those is added an unusual one, to the effect that its provisions were the result of a mistake of fact on the part of the decedent, in that item " Fourth " of the will stated: " As I have already advanced to Mildred Schulough, daughter of George S. Shumway, deceased, what I consider to be her share of my estate (and she having signed papers to that effect), I do not leave her anything further in my last Will and Testament," which advance by the testator is denied.

The testimony on the hearing conclusively demonstrated that there was absolutely no basis for any claim of lack of testamentary capacity, of the exercise of undue influence, or of improper execution of the instrument. The will was brought by testator to the subscribing witnesses, with whom he had been on terms of intimacy for a score of years, and there duly executed with all requisite formalities. The unimpeached testimony of these witnesses established beyond a doubt the testamentary capacity and volition of the decedent, leaving as the sole basis of the contest the alleged mistake of the testator in the statement of fact contained in the 4th item of the will. The only support in the record for a conclusion that such alleged mistake was made is contained in stipulations on the record which read as follows:

The proponent stipulated: " We will concede there is a mistake

made by the testator in respect to the language of paragraph fourth of the will and that he did not in his lifetime make any advances to your client, provided, however, you will concede that the first wife of this decedent in her lifetime made certain advances of property to your client and that your client executed this instrument and acknowledged it, which we will offer in evidence."

To this counsel for the contestant replied: " I will make that concession, but whether or not it is admissible in evidence, whether or not the deed to the contestant by the testator's wife or agreement signed by her are admissible in evidence, is a question for this Court to decide."

Upon the making of this stipulation, the petitioner offered in evidence a certain paper executed and acknowledged by the contestant, which read in part as follows:

" WHEREAS, Annie Shumway, wife of Isaac O. Shumway, has this 17th day of February, 1919, conveyed to Mildred Annie Shulhof, her grandchild, the premises known as No. 5 Kneer Avenue, at Rockaway Beach, Queens County, by her certain deed dated this day, said premises being situated on the westerly side of said Kneer Avenue commencing one hundred and fifty (150) feet northerly from the Boulevard,

" AND WHEREAS, said Mildred Annie Shulhof has accepted said conveyance, and has agreed to so accept the same in full satisfaction of any or all claims which she may now have or may hereafter have against said Annie Shumway or her estate in case of death."

The instrument then continues in the usual form of a general release from Mildred Annie Shulhof to Annie Shumway, concluding with the paragraph: " And I further promise, covenant and agree, in consideration of said conveyance to and with said Annie Shumway and her husband, Isaac O. Shumway, that I will not at any time at or after the death of said Annie Shumway, make any claim or demand against her estate, nor contest the validity of any will made by said Annie Shumway upon any grounds whatsoever."

Whereas no objection was interposed by the contestant to the admission of this document into evidence, in consequence of which, under ordinary principles, it must be considered in this determination (*Matter of Findlay*, 253 N. Y. 1, 11; *Flora* v. *Carbean*, 38 id. 111, 113), counsel for contestant, in his brief and in the argument preceding the making of the stipulation, questioned its admissibility. This position or attitude is apparently based on the language contained in certain Court of Appeals cases, the most recent of which is *Dwight* v. *Fancher* (245 N. Y. 71). Counsel's misconception of the rule enunciated in these cases is so general among

members of the bar that a word on the subject seems appropriate. The entire question is clarified in the recent case of *Matter of Smith* (254 N. Y. 283), where the court says (at p. 289): " It is the modern rule that ' with the exception of direct statements of intention, no extrinsic fact relevant to any legitimate question arising in the interpretation of writings and admissible under the general rules of evidence,' can be shut out. * * * It has been said by Professor Wigmore: ' The truth had finally to be recognized that words always need interpretation; that the process of interpretation inherently and invariably means the ascertainment of the association between words and external objects; and that this makes inevitable a free resort to extrinsic matters for applying and enforcing the document.' "

This is really merely an amplification of the previous holding of the same court in *March* v. *March* (186 N. Y. 99, 103), on which the contestant apparently relies for a contrary result.

In the light of these explanatory words of the Court of Appeals, it is entirely apparent that the document in question was admissible to disclose to the court the situation of the testator and his relation to the general subject-matter of his testamentary disposition and to the usual natural objects of his bounty, more especially to this contestant.

This preliminary point being determined, the main question will be considered. Reduced to its lowest terms, this question is: Will the inclusion by a competent testator, in an otherwise valid will, of a reason, mistaken in fact or inaccurately expressed, for the absence of a testamentary benefit to a named individual, wholly or partially invalidate such will?

The memorandum on behalf of the contestant gives evidence of extended research and careful preparation, with citations from English cases and references to adjudications in as widely scattered jurisdictions as Rhode Island and Oregon, and Michigan and Louisiana. Were there no New York determinations pertinent to the question raised, these decisions of other jurisdictions might well be worthy of careful consideration in attaining a result. As a matter of fact, however, questions similar to or identical with the present have on many occasions received consideration by our courts.

In the early case of *Thompson* v. *Quimby* (2 Bradf. Surr. 449) the court says (at p. 509): " The law treats the right of testamentary disposition with great tenderness. If questioned, it must be on strong grounds. To overturn this solemn, deliberate act, fraud, circumvention, idiocy, or lunacy must be affirmatively established."

In affirming the judgment of probate in this case (reported

*sub nom. Thompson* v. *Thompson,* 21 Barb. 107) the court says (at p. 114): "He assigned reasons why he gave a comparatively small part of his fortune to his relatives, which showed a mind sound in its power of reasoning, whether correct in its conclusion in the particular case or not."

In *Matter of Bedlow* (67 Hun, 408) the General Term, First Department, says (at p. 414): " * * * for the purpose of explaining the reason why no provision was made for them [certain members of his family] he expressed his sentiments in the will in question, and this was in harmony with other statements which had been made by him. It is entirely immaterial, so far as * * * the validity of this will is concerned, whether he was or was not mistaken in reference to the conduct of his family towards him. The validity of a testator's will does not depend upon the correctness of the information as to his surroundings at the time of making the will. If any other rule prevailed it certainly would open a wide field of investigation in the case of the probate of a will to ascertain whether the testator was correctly informed as to the conduct of every person who might think he had a claim upon the testator's bounty."

In *Clapp* v. *Fullerton* (34 N. Y. 190) a will was upheld where a testator, otherwise competent, entertained the mistaken idea that one of his daughters was illegitimate, as the result of the operation of slight but inadequate evidence upon a jealous and suspicious mind. The court said (at p. 197): "The right of a testator to dispose of his estate depends neither on the justice of his prejudices, nor the soundness of his reasoning. He may do what he will with his own; and if there be no defect in testamentary capacity, and no undue influence or fraud, the law gives effect to his will, though its provisions are unreasonable and unjust."

All reported cases in this State have followed this rule.

In *Matter of Tracy* (11 N. Y. St. Repr. 103) the General Term, Fifth Department, says (at p. 105): " * * * as her father had the legal right to dispose of his own, even to the total disinheriting of his only child, if he saw fit to do so, we can only inquire whether the testamentary papers left by him were made in the free exercise of a sound and disposing mind."

In *Matter of Bethune* (15 N. Y. St. Repr. 294) the General Term, First Department, says (at p. 296): " A will cannot be overturned simply because the testator had not correctly informed himself as to the facts and circumstances surrounding him."

In *Matter of O'Dea* (84 Hun, 591) the General Term, First Department, says (at p. 593): " * * * an erroneous belief suggested as a reason for the disinheritance of an heir, to affect the validity of the will of a testator, must be shown to be an insane delusion."

In *Boell* v. *Schwartz* (4 Bradf. Surr. 12) the court said: " The will offered for probate contains a clause directing certain advances made by the testator to his son-in-law, to be deducted from the share of his wife, the testator's daughter, together with interest from the time of the original loan. It is claimed that there is a mistake as to the sum mentioned in this provision, and that the error should be corrected on the probate. But there is no proof of any mistake as to the testator's intention and nothing to show that he designed to write any other sum in the will as the amount of the advances, than the one contained in the document as executed."

To like effect see *Matter of White* (121 N. Y. 406, 414); *Matter of Lang* (9 Misc. 521, 522, 523).

The fundamental difficulty in the position of the contestant is that whereas it is entirely true that it is the office of the court to effectuate the intentions of the testator, this principle is limited to such of his intentions as have been expressed by him in his will. (*Matter of Durand*, 250 N. Y. 45, 54; *Matter of Crouse*, 244 id. 400, 404; *Matter of Rossiter*, 134 Misc. 837, 839, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissmann*, 137 Misc. 113; *Matter of Gorra*, 135 id. 93, 95; *Matter of Storey*, 134 id. 791, 797; *Matter of Quinby*, Id. 296, 299; *Matter of Gargiulo*, Id. 182; *Matter of Gurlitz*, Id. 160.)

The contestant seeks as an alternative to the complete rejection of the will that the court should undertake to rewrite it in the light of what she believes he might have intended had this supposed mistake not been made. This the court will never do. (*Matter of Tamargo*, 220 N. Y. 225, 231; *Eidt* v. *Eidt*, 203 id. 325, 326; *Dreyer* v. *Reisman*, 202 id. 476, 480; *Matter of Kenny*, 224 App. Div. 152, 156; *Matter of Weiner*, 137 Misc. 46, 48; *Matter of Tousey*, 34 id. 363.)

As the court said in the last cited case (at p. 364): " An apparent mistake as to a matter of fact as to which the testator must have had full knowledge is not sufficient. *Mendinhall's Appeal*, 124 Penn. St. 387. In no case which has been brought to my notice has a will been refused probate, or has any attempt been made to correct or change its provisions on proof extraneous to the document of a mistake by the testator as to a fact which might possibly have led him to do something different from what he has done. On the contrary, the cases in the courts of this State which require the testator's directions to be followed, even though it may be made quite clearly to appear that he was actuated by erroneous opinions on questions of fact, are quite numerous."

In the case at bar the court is by no means satisfied that the

conceded mistake in the will was more than a draftsman's error. To be sure, the testator had not himself made an advancement to the contestant from property which at the moment stood in his own name, but a parcel of real estate had been advanced to her from the family entity of which he was the head. Although, on the law hereinbefore reviewed, the question is undoubtedly immaterial, the court is satisfied that the testator had this transfer in mind and in spite of the fact that his reference thereto was inaccurate, that he deemed that this granddaughter had by reason of this transfer received all to which she was entitled from the family assets.

In the last analysis, the testator had an absolute right to divert his property from this contestant; he was under no obligation to assign any reason for so doing, and an inaccurate statement of a reason will not be held to invalidate the free and voluntary testamentary directions of this competent testator.

The objections are, therefore, overruled and probate of the propounded instrument will be granted.

Enter decree on notice accordingly.